220 N.J. Super. 308 (1987)
531 A.2d 1368
STATE OF NEW JERSEY, PLAINTIFF,
v.
MICHAEL BARRETT, REGINALD BARRETT, JASON MORANT, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided May 28, 1987.
*310 Simon L. Rosenbach, for plaintiff (Alan A. Rockoff, Middlesex County Prosecutor attorney).
Anderson D. Harkov, for defendant Michael Barrett.
Edward Testino, for defendant Reginald Barrett (Vella & Testino, attorneys).
John A. Klamo, for defendant Jason Morant (Avena, Hendren, Friedman & Klamo, attorneys).
HOFFMAN, J.S.C.
This is a case of first impression in this State. Although arising from a motion to sever by two codefendants, the underlying and dispositive issue is whether the exclusionary rule prohibits the use of suppressed evidence by a defendant against a codefendant in a joint trial.[1]
The three defendants herein are named in a two count indictment charging them with possession of cocaine and possession of cocaine in an amount greater than one ounce, containing at least 3.5 grams of pure free base with intent to distribute in violation of N.J.S.A. 24:21-20 and N.J.S.A. 24:21-19 respectively. The facts are relatively uncomplicated. On February 12, 1986, defendant Michael Barrett was operating a motor vehicle on the New Jersey Turnpike. His brother and codefendant Reginald Barrett was seated next to him in the front seat and codefendant Jason Morant was seated in the rear. The vehicle was stopped by the New Jersey State Police for speeding. A search of the vehicle yielded almost one half of a pound of cocaine, with a street value of over $80,000, found in a brown paper bag wedged in the fold of the rear seat in the passenger compartment of the vehicle. A much smaller quantity *311 of the drug, weighing approximately 1.01 grams, was found in Jason Morant's duffle bag located in the trunk. A prior motion to suppress resulted in a finding by another court that the search of the passenger compartment was lawful; however, it suppressed the cocaine found in Morant's valise. Defendants Michael and Reginald Barrett (hereinafter "movants") now move for severance pursuant to R. 3:15-2(b), arguing that the continued joinder of defendants prevents them from introducing into evidence testimony regarding the cocaine found in the trunk, since it has been suppressed. This would impermissibly prejudice their defense.
R. 3:15-2(b) provides for the severance of codefendants where it appears to the Court "that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation." The grant or denial of a motion for severance is entrusted to the sound discretion of the trial court. R. 3:15-2(b); State v. Manney, 26 N.J. 362, 368 (1958); State v. Whipple, 156 N.J. Super. 46, 51 (App.Div. 1978). In deciding whether to grant a severance the trial court must balance the possible prejudice to the defendant against the government's interest in judicial economy and must consider the ways in which it can lessen the prejudice by other means. State v. Coleman, 46 N.J. 16 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); State v. Manney, supra. There is no right to a severance merely because the defendant believes he would have a better chance of acquittal were he not required to stand trial with his codefendant. State v. Morales, 138 N.J. Super. 225 (App.Div. 1975). If by proper instructions and charges to the jury the separate status of codefendants can be maintained, the "danger by association" which inheres in all joint trials is effectively overcome. State v. Freeman, 64 N.J. 66, 68 (1973).
Underlying the instant motion for severance is the movants' assumption that the suppression of the 1.01 grams of cocaine found in the trunk precludes the admission of that evidence, or *312 testimony pertaining thereto, not only by the State but by a codefendant as well. If this assumption is correct, movants are absolutely precluded from putting forth potentially exculpatory evidence since to do otherwise would violate Jason Morant's constitutionally protected right to exclude illegally seized evidence from his trial.[2] However admirable movants' concern for the protection of Jason Morant's constitutional rights, the assumption that illegally seized evidence is inadmissable by a codefendant appears to be virtually unsupported in both New Jersey and federal case law. A review of the relevant cases exploring the rationale and application of the exclusionary rule shows that none of the policy concerns underlying the rule are advanced by affording it so broad a scope.
It is axiomatic that the primary purpose of the exclusionary rule is the deterrence of police misconduct. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); State v. Novembrino, 105 N.J. 95 (1987). In addition, however, "(t)he rule ... serves as the indispensible mechanism for vindicating the constitutional right to be free from unreasonable searches." State v. Novembrino, supra, 105 N.J. at 157.[3] That defendant *313 is granted a windfall at the expense of the State's case-in-chief is seen by the courts as far less disturbing than the unbridled trampling of the individual's constitutional rights.[4]Mapp v. Ohio, supra.
The federal application of the exclusionary rule had its genesis in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and was made applicable to the states through the fourteenth amendment in Mapp v. Ohio, supra. Following Mapp, the rule was first applied in New Jersey in State v. Valentin, 36 N.J. 41 (1961). In Novembrino, the Court traced the application of the rule in this State:
Since State v. Valentin, supra, the exclusionary rule has become imbedded in our jurisprudence. During the past twenty-five years it has consistently been applied to exclude from the State's case-in-chief evidence illegally obtained through warrantless searches or in reliance on defective warrants. E.g., State v. Valencia, 93 N.J. 126, 141 (1983) (evidence obtained as a result of telephone-authorized search would be suppressed where State failed to prove minimal procedural requirements to assure reliability); State v. Fariello, supra 71 N.J. 552 (requiring suppression of evidence of narcotics possession where affidavit was insufficient to show probable cause and issuing judge made no transcription or summary of officer's testimony); State v. Macri, supra, 39 N.J. [250] at 265-66 (mandating suppression of illegally seized evidence of bookmaking activities and rejecting State's argument in support of a good faith exception: "The good faith of the officer would not be sufficient here."); State v. Moriarity, 39 N.J. 502 (1963) (evidence that defendant conducted bookmaking and lottery was suppressed where affidavit did not show probable cause and officer's testimony to issuing judge not given under oath). [105 N.J. at 148, footnote omitted.]
*314 Notable in each of the cases cited in Novembrino, and in Novembrino itself, the evidence subject to suppression was excluded only from the State's case-in-chief. As noted earlier, research has not revealed, nor have movants submitted any reported New Jersey or federal decision where the evidence suppressed was excluded from a co-defendant's direct case.
It is apparent that despite its tainted character, ever-widening use is being made of suppressed evidence, progressively narrowing the scope of the rule. Over three decades ago the United States Supreme Court recognized the right of the State to introduce illegally seized evidence for impeachment purposes in Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Such usage was recently expanded to include the impeachment of defendant's answers on cross-examination if plainly within the scope of the direct, United States v. Havens, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). In United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the court held that a grand jury witness could not invoke the rule to refuse to answer questions based on a defective search warrant, and in United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), that unlawfully seized evidence may be used by another sovereign in a civil action. In United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2nd Cir.1970), the Court ruled that suppressed evidence may be considered by a parole board in determining whether to revoke parole. Eight years later a New Jersey trial court ruled that such evidence may be considered with respect to defendant's motion for suspension of further proceedings, State v. Banks, 157 N.J. Super. 442 (Law Div. 1978), reasoning that "(d)oing so will neither license nor encourage law enforcement officials to override the bulwark against government intrusion raised by the Fourth Amendment." Id. at 451.
Critical to the determination herein is the very nature of the evidence. Unlike a confession obtained in violation of *315 Miranda[5] and a hearsay statement made by a defendant implicating a codefendant,[6] there is nothing inherently unreliable about physical evidence obtained wrongfully which renders it inadmissible. A confession obtained in violation in Miranda is deemed unreliable because of the very great potential for coercion inherent in the interrogation process. Likewise, an out-of-court confession by a defendant implicating a codefendant is inadmissible under Bruton[7] because by its nature, it is unverifiable hearsay.[8] Neither of these considerations apply with respect to inherently reliable physical evidence. As noted in State v. Whittingham, 142 N.J. Super. 45 (App.Div. 1976):[9]
A confession, if found to be voluntary and trustworthy, is inclupatory proof of the highest order. The exclusionary rule employed against receiving involuntary confessions into evidence serves as a deterrent against lawless police conduct: the rule even more importantly bears upon the probative worth or quality of the underlying evidence. Thus, the principal historical basis for the exclusion of self-incriminating statements obtained in violation of *316 constitutional strictures recognizes the very great risk that evidence originating in this fashion is probably unreliable ...
These considerations do not apply with the same force to the issues involved with respect to evidence seized, tested under the fourth amendment requirements. That evidence is generally demonstrative or tangible in nature. As noted, the circumstances under which a statement or confession has been secured bear directly upon its probative worth. The reliability of tangible or physical evidence, however, is ordinarily not affected by the manner in which it was obtained. Thus, the essential if not sole purpose served by the exclusionary rule in the context of a fourth amendment controversy is prophylactic  to deter and discourage police conduct which is constitutionally offensive. In this setting the rule of exclusion does not clearly augment the truth determining function of the criminal trial, as in the case of a confession, by shielding from the record probably unreliable or untrustworthy evidence. [at 50-51; emphasis supplied]
In sum, the purpose underlying the exclusionary rule is fulfilled when evidence obtained as a result of police misconduct, as was the evidence here, is excluded from the State's case-in-chief.[10] "Where the sole objective in seizing evidence in good faith, but contrary to the dictates of the Fourth Amendment, is to obtain a criminal conviction and its use for that purpose has been suppressed, the policy behind the exclusionary rule has been fully satisfied." State v. Banks, supra, 157 N.J. Super. at 451 (citing United States v. Janis, supra, 428 U.S. 458, 96 S.Ct. at 3034). I find that there is no authority for the proposition that suppressed evidence may not be admitted into a codefendant's direct case. I further find that the evidence sought to be introduced is inherently reliable and subject to cross-examination. By limiting the evidence to Evid.R. 55 purposes, the movants are given the benefit of the use of the evidence in the case; yet Jason Morant is sufficiency protected from any undue prejudice resulting from its admission. Thus, the claim of prejudice on which the motion to sever is based must fall. Moreover, I have considered the impact of a severance *317 on the right of the State to a fair trial[11] and find that the resultant prejudice to the State is potentially significant.
The motion to sever is denied.
NOTES
[1] The severance motion was originally made prior to trial and denied. The decision of the Court was delivered orally at the time. The matter was tried jointly and defendants were found guilty. After the guilty verdict and prior to sentencing this opinion was written and distributed to counsel to memorialize and expand the Court's decision for denying the severance motions.
[2] At the trial of this case, the movants attempted to introduce into evidence testimony relating to the 1.01 grams of cocaine found in Jason Morant's valise so as to permit the jury to draw the inference that Morant was also the owner of the controlled dangerous substance C.D.S. found in the rear seat of the vehicle. Although the court admitted the evidence, its' use was limited to that allowed under Evid.R. 55, which provides "evidence that a person committed a crime or civil wrong on a specified occasion ... is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident," thus restricting its' use to the issues of Morant's knowledge of and intent to exercise dominion and control over the C.D.S. in the passenger compartment. N.J.S.A. 24:21-20; accord, State v. Rajnai, 132 N.J. Super. 530 (App.Div. 1975) (possession of narcotics paraphanalia is relevant to show intent and knowledge with respect to possession of heroin and thus relevant to the res gestae).
[3] The Novembrino decision marks a watershed in future applications of the exclusionary rule in New Jersey. It lays to rest the long term confusion regarding the source of the rule by securely grounding it in both our state and federal constitutions, and then uses that principle as the basis of its rejection of the "good faith" exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (evidence seized pursuant to a warrant issued without probable cause is not subject to exclusion if executing police officer relied in "good faith" on the defective warrant).
[4] The Fourth and Fourteenth Amendments do not require exclusion of evidence obtained through private actions; evidence obtained solely through non-governmental efforts can be reported or surrendered to police without violating a defendant's constitutional rights regardless of the means by which the civilian discovered the evidence. State v. Droutman, 143 N.J. Super. 322 (Law Div. 1976).
[5] Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (mandating that the accused be informed, prior to interrogation, of his right to remain silent, his right to counsel, his right to assigned counsel if indigent, and that if he requests counsel all interrogation must cease).
[6] See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), app. after remand 416 F.2d 310 (8 Cir.1969), cert. den. 397 U.S. 1014, 90 S.Ct. 1248, 25 L.Ed.2d 428 (1970) (requiring severance if effective deletions of inculpatory portions of codefendant's out-of-court confession cannot be made).
[7] Ibid.
[8] The protection afforded by Bruton is derived from the Sixth Amendment right of confrontation afforded by cross-examination, and is designed to avoid the immensely prejudicial effect of admitting inculpatory statements, or the inculpatory portions thereof, made by a defendant and implicating a codefendant, where the defendant either does not take the stand or denies having made the statement. See Pressler, Current N.J. Court Rules, Comment R. 3:15-2(b).
[9] In Whittingham the court considered the question of whether the standard to be applied by a trial judge on the issue of the legality of a warrantless search was properly the "beyond a reasonable doubt" standard for proving criminal guilt, ultimately holding in the negative, that the standard to be applied shall be by a prepondence of the evidence.
[10] In addition to the State being prohibited from introducing the evidence at the trial, the prosecution was barred from commenting on the evidence in the trunk in its opening statement, its summation, or ask any questions on direct or cross examination of any witness concerning the evidence.
[11] As noted in 32, New Jersey Practice (Arnold 2 ed.), 1029 at 401 (1980), "(a) favorite tactic of defense counsel, particularly when defendants have been severed for trial, is to attempt to place the blame of the criminal act on the defendant who is not on trial. Defense counsel may try to do this by introducing specific instance of conduct."