241 N.J. Super. 121 (1990)
574 A.2d 502
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JASON MORANT, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
REGINALD BARRETT, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL BARRETT, DEFENDANT-APPELLANT.[1]
Superior Court of New Jersey, Appellate Division.
Argued/Submitted December 18, 1989.
Decided May 9, 1990.
*123 Before Judges O'BRIEN, HAVEY and STERN.
John A. Klamo argued the cause for appellant Jason Morant in A-1575-87T4 (Avena, Friedman & Klamo, attorneys for appellant; John A. Klamo of counsel and on the brief).
Simon Louis Rosenbach, Middlesex County Assistant Prosecutor, argued the cause for respondent in A-1575-87T4 (Alan A. Rockoff, Middlesex County Prosecutor, attorney; Simon Louis Rosenbach of counsel and on the brief).
Alfred A. Slocum, Public Defender, attorney for appellant Reginald Barrett in A-1758-87T4 (James W. Donnelly, designated counsel, on the brief). Supplemental letter brief pro se.
Alfred A. Slocum, Public Defender, attorney for appellant Michael Barrett in A-2551-87T4 (Ruth A. Harrigan, designated counsel, of counsel and on the letter brief and reply brief).
*124 Alan A. Rockoff, Middlesex County Prosecutor, attorney for respondents in A-1758 and 2551-87T4 (Simon Louis Rosenbach, Middlesex County Assistant Prosecutor, of counsel and on the briefs).
The opinion of the court was delivered by STERN, J.A.D.
The important issue raised on this appeal is whether a defendant can offer suppressed evidence against a codefendant in a joint possession case. Part of the evidence seized from a car and its trunk was suppressed, but the Barrett brothers sought to introduce that evidence against codefendant Morant on the theory that, if the jury knew the suppressed evidence was found in Morant's duffel bag in the trunk of the car, it might infer that he possessed the balance of the drugs found within the car. Morant contends that the suppressed evidence was improperly admitted at his trial, and the Barretts claim they were entitled to severance from Morant. All three claim prejudice requiring a new trial. We reverse the conviction of Morant, but affirm the convictions of the Barretts.
The Barretts and Morant were indicted for possession of cocaine "in a quantity of 1 ounce or more ... [with] at least 3.5 grams of the pure free base", contrary to N.J.S.A. 24:21-20(a)(2) (count one) and possession of that substance with intent to distribute, contrary to N.J.S.A. 24:21-19(a)(1) and -19(b)(2) (count two). The Barretts were convicted on both counts. The first was merged into the second and both were sentenced to the custody of the Commissioner of the Department of Corrections for twelve years. Reginald was ordered to serve four years without parole, and Michael three-and-a-half years before parole eligibility. Morant was convicted of possession under the first count but acquitted on count two. He received an indeterminate term not to exceed five years.

*125 I.
Defendants moved to suppress evidence of the 212.2 grams of 79.7 percent pure cocaine found in the passenger compartment of the vehicle and 1.01 grams of cocaine found in Morant's duffel bag seized from the trunk of the vehicle. The motion was granted as to the cocaine taken from the trunk, but denied with respect to that found in the passenger compartment of the vehicle.
The significant issue must be understood in light of the suppressed evidence. As there is no issue addressed to the weight or sufficiency of the evidence resulting in the convictions at trial, we concentrate on the testimony admitted at the motion to suppress.[2]
On February 12, 1986, State Trooper William M. Toms (hereinafter "Toms") observed a four-door 1985 Lincoln Town Car with Virginia license plates pass his marked vehicle traveling in excess of the 55 m.p.h. speed limit. Toms determined, after "pace clock[ing]" the vehicle, that it was "traveling at a steady speed of 68 miles per hour."
After making a "Z" turn and maneuvering through traffic Toms pulled behind the vehicle to effect a motor vehicle stop. According to Toms, while behind the vehicle, Morant, a passenger in the back seat, looked at him and started "contorting in the back seat, as if turning and bending down as if he was trying to conceal something ... began to jump nervously, there was definite movement in the back." The driver of the vehicle was identified as Michael Barrett and the front seat passenger was identified as his brother Reginald. According to Toms, "Reginald Barrett who was the front right passenger was *126 turning over his left shoulder looking back and Jason was jumping in the back seat and he was bending to his right."
Concerned for his "personal safety", Toms "wanted to make sure that there were no weapons ... that could harm him." He thus conducted a pat down of the Barretts with negative results. While patting down Reginald, Toms noticed what appeared to be "a half a joint, a half of a marijuana cigarette" in a "clear plastic zip lock bag" on the front seat of the vehicle. He did not immediately observe the marijuana because Morant "jumped out of the vehicle." A "pat down" of Morant was also negative.
After completing the pat downs, Toms opened the right rear door of the vehicle and observed that "it was obvious that [the seat] was unattached and it had been slid forward. The crack where the seat belts normally come out of which is very tight, there was a large gap there." Toms "could see brown paper sticking up out of the crack, what it appeared to be ... just a brown paper bag.... [He] slid the unattached seat forward ... inside the brown paper bag, there were two clear plastic bags, ... found to contain a white powdery substance which was later tested positive for Cocaine."[3]
After calling for a "backup" defendants were handcuffed, advised of their Miranda rights[4] and transported to the station. Once at the station, defendants were strip searched, with negative results. Defendants were again advised of their Miranda rights and signed forms acknowledging same.
Toms "advised [the Barretts of] what was found in the vehicle" and asked them if there was any contraband in the trunk. They said "[n]o" and voiced no objection to a search of the trunk. Toms then advised the defendants of the "Johnson decision," (see State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975)) *127 relating to their right not to consent to a search of the trunk. "[T]hey stated that there was nothing in the trunk and that there was no problem with conducting a check of the trunk." Similarly, Morant indicated "no problem in checking the trunk because there was no contraband in it." There were no "Johnson forms" available for defendants to sign.
A search of the vehicle's trunk produced "a camouflage duffel bag ... that belonged to Jason Morant when he was in the Marine Corps. It was labeled as such." Inside the duffel bag was a "black pouch" with Morant's name on it. Inside the black pouch was a wallet and inside the wallet Toms found what was later identified as 1.01 grams of cocaine.
Morant testified at the motion that upon seeing the trooper, who motioned for the vehicle to pull over, he reached into his jacket to get his wallet from the jacket which was on the back seat. He further testified that, after the Barretts and he got out of the car, Officer Toms said he saw a beer can in the car, opened the door and "went through the glove compartment." Toms thereafter opened the back door and "dislocated the back seat."[5] Morant denied the back seat of the vehicle was unattached. He claimed that after the trooper "detached the back seat, he stood up and pulled his gun." He confirmed that he was given his Miranda rights, but denied that he was asked for his consent to search the vehicle's trunk.
The Barretts did not testify at the motion.

II.
The judge "accept[ed] the trooper's version" on essential facts and found that he was entitled to "investigate for a gun" and to take action "based upon [his] observations of furtive conduct." He also found "there was a gap between the seat portion and the backrest portion, that the seat was no[t] locked *128 in" and that Toms observed the paper bag containing "contraband." However, the motion judge accepted portions of Morant's testimony and found that the State had not clearly and convincingly established that consent was given "with respect to the duffle and the bag that ha[d] Mr. Morant's name on it."
Based on our scope of review, State v. Johnson, 42 N.J. 146, 199 A.2d 809 (1964), and the observations made by the officer from outside the car, we reject the challenge by all defendants to the denial of their motion to suppress the evidence found within the car. See e.g., Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); State v. Hall, 93 N.J. 552, 561, 461 A.2d 1155 (1983); State v. Patino, 83 N.J. 1, 14-15, 414 A.2d 1327 (1980); State v. Carter, 235 N.J. Super. 232, 561 A.2d 1196 (App.Div. 1989).
We also note that the State never sought leave to appeal from the suppression of the cocaine in Morant's duffel bag. Hence, we are not asked to decide whether the search within the duffel bag should have been sustained on the basis of consent to search the trunk, or otherwise. We note that the defendants were then in custody, having been arrested by virtue of the cocaine found in the car and that, in any event, the judge found a lack of knowing consent. See and compare, e.g., State v. Martin, 87 N.J. 561, 436 A.2d 96 (1981); State v. Santana, 215 N.J. Super. 63, 521 A.2d 346 (App.Div. 1987). Thus, we must approach this case with deference to both rulings on the pre-trial motion to suppress.

III.
After the motion to suppress was partially denied, the Barretts moved for a severance.[6] They argued that a joint trial would preclude them from introducing the suppressed evidence which would provide an inference that Morant, and not the *129 Barretts, possessed the cocaine behind the rear seat in the car. The prosecutor saw no evidentiary or "Fourth Amendment problem" at a joint trial because the Barretts or another witness could testify about the cocaine in the trunk and the "physical evidence [is the] equivalent of testimony." The trial judge denied the motion because he concluded that the cocaine found in Morant's duffel bag could be used by the Barretts at the joint trial to permit the jury to draw such an inference. State v. Barrett, 220 N.J. Super. 308, 531 A.2d 1368 (Law Div. 1987). Use of this evidence, however, was "limited to that allowed under Evid.R. 55" with respect to issues of "Morant's knowledge of and intent to exercise dominion and control of the C.D.S. in the passenger compartment." 220 N.J. Super. at 312, n. 2, 531 A.2d 1368. Moreover, the State was "prohibited from introducing the evidence at the trial, [and] the prosecution was barred from commenting on the evidence in the trunk in its opening statement, its summation or [from asking] any questions on direct or cross examination of any witness concerning the evidence." 220 N.J. Super. at 316, n. 10, 531 A.2d 1368.

IV.
The Barretts' motion for severance was heard on May 28, 1987, at which time the judge orally denied the motion in light of his ruling permitting the Barretts to introduce the cocaine from the trunk with a limiting instruction.[7] Neither Morant nor his attorney were present at the hearing, but the judge indicated he would permit counsel for Morant to present arguments with respect to the admissibility of the evidence.
At a pre-trial conference on June 3, 1987, Morant's attorney stated that he did not attend the motion to sever because he did *130 not oppose that motion and opposed any introduction of the suppressed evidence against his client. The State indicated its view that the issue regarding admissibility of the suppressed evidence "is between the defense attorneys." The judge adhered to his original position that the defense could introduce the suppressed evidence and requested counsel to prepare instructions with respect to the limited admissibility of the evidence.
After opening statements on June 8, 1987, Morant again urged that the suppressed evidence not be admitted and that no limiting instruction was adequate. The judge asked all counsel to prepare limiting instructions because he felt the evidence was admissible under Evid.R. 55 and could be admitted with proper limiting instructions.
On cross-examination by Michael Barrett's attorney, Trooper Toms was asked about the search of the trunk and identified the 1.01 grams of cocaine taken from the duffel bag therein. The judge thereafter gave a limiting instruction that no defendant was "charged with" the evidence found in the trunk and that the State had to prove beyond a reasonable doubt that defendants possessed "the large quantity and not that little bag, that little piece of plastic." Morant subsequently moved for a mistrial because of the need for severance, to which the court responded that Morant never moved or appeared on the original motion. Morant's attorney further claimed that he would have had the cocaine from the duffel bag tested if he had known it was going to be admitted into evidence.
Trooper Toms was also cross-examined by Morant about the evidence found in the trunk and testified that Morant had no objection to the search of the trunk. On redirect the prosecutor asked Toms about the size of the duffel bag but no questions concerning the cocaine therein. On cross-examination of the State's laboratory expert witness, Morant developed that there was no analysis done of the substance found in the trunk. This was confirmed through an investigator from the Middlesex County Prosecutor's Office.
*131 Testimony was also developed that the car defendants were in was a rental, its impact, the reasons given for the rental (the agency was told it was to be used in a funeral) and the fact that the Barretts were included as drivers in the rental agreement.
Both Barretts testified at the trial and denied knowledge of the cocaine found in the vehicle and the trunk. During Michael Barrett's cross-examination by Morant, questions were asked about the trooper's testimony concerning the duffel bag in the trunk.
On his direct examination, Morant acknowledged that he "use[s] drugs occasionally" and carried them on his person or in his wallet. He admitted possession of the small amount of cocaine in the trunk, but denied knowledge of the cocaine inside the car. On cross-examination by Reginald's attorney, Morant again admitted using cocaine "occasionally," and owning the cocaine in the duffel bag. However, he denied being an addict. When asked by Michael's attorney, "[w]hat did the gram of cocaine cost you, Mr. Morant?", defendant replied "I didn't pay for it" and that "[i]t was given to me." The subject was not pursued.
Morant also testified that Reginald Barrett "dropped [him] and Michael Barrett off at a pizza parlor and said he'd be back in five or ten minutes ... He said, I just got to do something." Morant further testified that he was not told that the cocaine was hidden in the rear seat.[8]
The small quantity of cocaine from the duffel bag in the trunk, Exhibit MB-1, was introduced into evidence.
*132 Reginald Barrett's attorney stated in his summation that "Mr. Morant quite frankly admitted that he possessed this small quantity of cocaine located in the trunk of the car," contending that he possessed all of the cocaine. Morant used his admission to support his credibility with respect to his lack of possession of the larger quantity of cocaine found in the car. Michael Barrett, like his brother, challenged the credibility of Morant.
During his instructions to the jury at the end of the case, the trial judge charged:
As I told you before, the defendants are only charged with regard to that allegedly found in the interior portion of the car. I instruct you that you cannot consider possession of the cocaine in the trunk as proof of the disposition to possess the cocaine in the interior.
In brief, you cannot infer that the possessor of the cocaine in the trunk was the possessor of the greater quantity inside the car. You cannot consider that the possession of the smaller is a disposition of that person to possess the greater. However, you can consider it and I'm asking to you do some real mental gymnastics here, but this is what the law is as I can see it.
You may consider the possession of the cocaine in the trunk not on the question of the disposition to have that inside the car, but you can consider it on other issues that have arisen in the case.
You have heard me use the term such as knowledge or purpose or intent or plan in conjunction with the charges. You may consider the cocaine in the trunk on these issues and give it whatever weight you want, whether that be great, slight or none at all.

V.
We commence consideration of the severance issue by reference to certain general propositions.

*133 Although antagonistic defenses seem to be a well-recognized ground for a separate trial, nevertheless the cases ... have revealed an apparent reluctance on the part of trial courts to grant severance upon this ground and an apparent reluctance by appellate courts to find reversible error in the denial of severance by the trial court. [Annotation, "Antagonistic Defenses as Ground for Separate Trials of Codefendants in Criminal Case", 82 A.L.R.3d 245, 250 (1978) (footnote omitted)].
Further, it is fairly well settled that:
The mere allegation of antagonistic defenses, the mere apprehension that the defenses may prove to be antagonistic, mere inconsistencies in defenses or trial strategies, or the fact that there is hostility between the defendant and codefendants, is not sufficient to require a severance. Id. at 250 (footnotes omitted).
Severances cannot be granted before trial on mere allegations that some antagonistic defense will develop, but where they do in fact arise and prejudice results, convictions have been reversed with directions for retrial after severance. See Annotation, supra. These general rules have been applicable in cases involving joint possession of narcotics. See Annotation, supra at 82 ALR 3d at 311-318 and Supp. at 35-37.
Generally, in a joint possession case, the fact that both defendants denied possession is not a grounds for severance, and this is true in cases involving joint possession in a motor vehicle. See, e.g., United States v. Bautista, 731 F.2d 97, 99-100 (1st Cir.1984). It generally makes no difference that one or more codefendants take the stand and deny possession of narcotics in the car. See United States v. Garcia Fernandez, 658 F. Supp. 41, 43 (E.D.Pa. 1987), aff'd 838 F.2d 1206, 1207 (3rd Cir.1988). This case, however, deals with more than the mere pre-trial assertion of antagonistic defenses or the possibility of same. Here, the Barretts did not initially request admission of the suppressed evidence, but moved for severance in an effort to use that evidence against Morant in order to exculpate themselves.
The trial judge endeavored to be practical. It is apparent that he recognized the inherent prejudice to the State caused by the severance of codefendants charged with joint possession. Moreover, as he developed, there is a basis for distinguishing *134 between the clear inadmissibility on the State's case of suppressed evidence and the use by a co-defendant of such proof. The distinction flows from the fact that the Fourth Amendment's exclusionary rule is a restriction against governmental action. See e.g., United States v. Jacobsen, 466 U.S. 109, 113-121, 104 S.Ct. 1652, 80 L.Ed.2d 85, 94-99 (1984) (inspection of damaged package by employees of private carrier resulting in discovery of narcotics and removal and testing by federal officials not violative of Fourth Amendment); Coolidge v. New Hampshire, 403 U.S. 443, 487-490, 91 S.Ct. 2022, 2048-2050, 29 L.Ed. 564, 595-596 (1971) reh'g den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971) (production of husband's belongings by wife did not involve governmental action) (majority opinion).
The judge also recognized the guiding principles that "[i]n deciding whether to grant a severance the trial court must balance the possible prejudice to the defendant against the government's interest in judicial economy and must consider the ways in which it can lessen the prejudice by other means", and noted that "[i]f by proper instructions and charges to the jury the separate status of codefendants can be maintained, the `danger by association' which inheres in all joint trials is effectively overcome." Barrett, supra, 220 N.J. Super. at 311, 531 A.2d 1368. Recognizing Morant's "constitutionally protected right to exclude illegally seized evidence from his trial", the trial judge ruled that "the assumption that illegally seized evidence is inadmissible by a codefendant appears to be virtually unsupported in both New Jersey and federal case law." Id. at 312, 531 A.2d 1368. He also noted that the New Jersey cases suppressing evidence involved exclusion "only from the State's case-in-chief"; that the exclusionary rule was being "progressively narrow[ed]"; and that illegally seized evidence had been held admissible for impeachment purposes, among others. Id. at 314, 531 A.2d 1368. (emphasis in original).
The judge further distinguished the use of suppressed evidence from a defendant's confession and from the hearsay statement of a codefendant because "there is nothing inherently *135 unreliable about physical evidence obtained wrongfully which renders it inadmissible." Id. at 315, 531 A.2d 1368. The judge distinguished physical evidence from a confession obtained in violation of Miranda v. Arizona, supra, and an out-of-court confession by a codefendant which is inadmissible against a defendant under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). While recognizing that Bruton required severance of trials before admissibility of an extra-judicial declaration of a codefendant which included inculpatory references to defendant, the judge distinguished the Bruton rule from the issue at hand because "an out-of-court confession by a defendant implicating a codefendant is inadmissible under Bruton because by its nature, it is unverifiable hearsay." Barrett, supra, 220 N.J. Super. at 315, 531 A.2d 1368 (footnotes omitted). The judge thereafter quoted from State v. Whittington, 142 N.J. Super. 45, 51, 359 A.2d 881 (App.Div. 1976):
[t]he reliability of tangible or physical evidence, however, is not ordinarily affected by the manner in which it was obtained. Thus, the essential, if not sole, purpose served by the exclusionary rule in the context of a Fourth Amendment controversy is prophylactic  to deter and discourage police conduct which is constitutionally offensive. In this setting the rule of exclusion does not clearly augment the truth-determining function of the criminal trial, as in the case of a confession, by shielding from the record probably unreliable or untrustworthy evidence.
The judge, therefore, concluded:
In sum, the purpose underlying the exclusionary rule is fulfilled when the evidence obtained as a result of police misconduct, as was the evidence here, is excluded from the State's case-in-chief. `Where the sole objective in seizing evidence in good faith, but contrary to the dictates of the Fourth Amendment, is to obtain a criminal conviction and its use for that purpose has been suppressed, the policy behind the exclusionary rule has been fully satisfied.' State v. Banks [157 N.J. Super. 442, 451, 384 A.2d 1164 (Law Div. 1978) (citing United States v. Janis, 428 U.S. 433, 458, 96 S.Ct. 3021, 3034, 49 L.Ed.2d 1046, 1063 (1976)).]
I find that there is no authority for the proposition that suppressed evidence may not be admitted into a co-defendant's direct case. I further find that the evidence sought to be introduced is inherently reliable and subject to cross-examination. By limiting the evidence to Evid.R. 55 purposes, the movants are *136 given the benefit of the use of the evidence in the case; yet Jason Morant is [sufficiently] protected from any undue prejudice resulting from its admission. Thus, the claim of prejudice on which the motion to sever is based must fall. [220 N.J. Super. at 316, 531 A.2d 1368].
As noted, "[i]n addition to the State being prohibited from introducing the evidence at trial, the prosecution was barred from commenting on the evidence in the trunk in its opening statement, its summation, or [from asking] any questions on direct or cross examination of any witness concerning the evidence." Id. at footnote 10, 359 A.2d 881.
It is true that there are differences between statements and physical evidence, and those distinctions have been developed in various settings. See, e.g., State v. Robinson, 224 N.J. Super. 495, 540 A.2d 1313 (App.Div. 1988). It is also true that the Bruton rule has been limited. For example, it has not been applied to prohibit introduction of a codefendant's extra-judicial statement when defendant's own interlocking confession is introduced. See Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). But as stated in Bruton, "... there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." 391 U.S. at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 485. Thus, despite Parker v. Randolph, supra, a pretrial statement of a non-testifying codefendant is not admissible even against the declarant with a limiting instruction, despite defendant's confession, because of the "devastating" impact of the evidence and "the likelihood that the instruction will be disregarded," Cruz v. New York, 481 U.S. 186, 191-193, 107 S.Ct. 1714, 95 L.Ed.2d 162, 170-172 (1987); compare, Richardson v. Marsh, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). The inherent prejudice has led our own Supreme Court, as a matter of New Jersey law, to reject the rule of Parker v. Randolph and to require severance when references to codefendants cannot be *137 effectively deleted from interlocking confessions. See State v. Haskell, 100 N.J. 469, 478-479, 495 A.2d 1341 (1985).
We appreciate the fact that the trial judge denied the motion to sever for the reasons stated by him and, initially, in the absence of any position from Morant. Nonetheless, we are satisfied that Morant's conviction must be reversed because we conclude from the record that he was prejudiced by the admission of suppressed evidence; and we are of the view that evidence based on unlawful conduct of police officers cannot be admitted against a criminal defendant in New Jersey even at the request of a codefendant private citizen. Cf. State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987); State v. Haskell, supra; State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975). Thus, had Morant moved for severance in a timely fashion, its denial under these circumstances would have constituted an abuse of discretion. State v. Haskell, supra, 100 N.J. at 478-479, 495 A.2d 1341 ("`[t]here is no constitutional impediment against New Jersey providing a more protective rule than that followed under Federal law'"; the goal is to "preclude prejudice before it arises" by severing under R. 3:15-2(a); "[n]ot only does that practice preclude the possibility of prejudice to the defendant, but it saves appellate courts from having to speculate whether juries were prejudiced by the presentation of otherwise inadmissible evidence.")
Based on our review of the record, we must conclude that the jury may well have considered the evidence in the trunk as the basis for the simple possession conviction returned against Morant or considered that evidence substantively, despite the limiting instructions, as the basis for convicting him of possession of the cocaine inside the car. There is little rational basis in the record for treating the nature of Morant's possession within the car differently than that of the Barrett brothers, unless the jury concluded that Morant possessed the cocaine in the trunk independent of the larger quantity the Barretts were *138 convicted of possessing with intent to distribute.[9] Hence, despite the instructions and efforts of the trial judge, we cannot say with any degree of assuredness that Morant was not unduly prejudiced by the introduction of the suppressed evidence. Cf. United States v. Gonzalez, 804 F.2d 691, 695 (11th Cir.1986), reh'g den. 818 F.2d 871 (11th Cir.1987).

VI.
However, the Barretts are not entitled to a new trial. There is no doubt from the record that they were permitted to utilize the suppressed evidence and to suggest to the jury that Morant's possession of the cocaine in his duffel bag was evidence that he was the possessor of the quantity in the back of the car where he was sitting.[10] We acknowledge that the Barretts would have been "better off" at a separate trial, particularly at one at which Morant did not testify, but we are nevertheless of the view that they received a sufficiently fair trial and were able to use the very evidence for which they sought a severance. The fact that Morant testified at the joint trial and pointed the blame at the Barretts does not control. In fact, as the judge implicitly recognized, the State is generally prejudiced (as it undoubtedly would have been here) by a severance resulting in trials where defendants take the stand and point the finger of blame towards the empty seat.[11] Further, *139 there is no suggestion that any defendant could have produced evidence at a severed trial that was not presented by that defendant in this case. See United States v. Mims, 812 F.2d 1068, 1075-1076 (8th Cir.1987). Thus, we find no undue prejudice against the Barretts and therefore no basis for reversal. See United States v. Webster, 734 F.2d 1048, 1053-1054 (5th Cir.1984) (admission of one defendant regarding same acts); United States v. Moschiano, 695 F.2d 236, 246-247 (7th Cir.1982), cert. den. 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983) (instructions regarding use of prior crime evidence against co-defendant adequate to protect defendant); see also United States v. Magdaniel-Mora, 746 F.2d 715, 718 (11th Cir.1984), reh'g den. 751 F.2d 1261 (11th Cir.1985) ("... persons indicted together should ordinarily be tried together [and] ... [t]o establish an abuse of discretion the defendant must demonstrate that without severance he was unable to receive a fair trial and that he suffered compelling prejudice against which the trial court could offer no protection. [citations omitted]"); State v. Lyons, 211 N.J. Super. 403, 511 A.2d 1241 (App.Div. 1986).
As stated in United States v. Sheikh, 654 F.2d 1057, 1064-1066 (5th Cir.1981), cert. den. 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982), with respect the review of a decision under the federal rule equivalent to our R. 3:15-2(b) (relief from prejudicial joinder):
The decision to grant or to deny a motion for severance rests within the sound discretion of the trial court, which will not be overturned on appeal without an affirmative showing of an abuse of discretion. Rule 14 of the Federal Rules of Criminal Procedure, providing for relief from joinder of defendants, has been interpreted to require that prejudice to the defendant attendant to a joint trial be balanced against the interests of judicial economy to determine whether severance ought to be granted. United States v. Garza, 563 F.2d 1164, 1166 (5th Cir.1977), cert. denied 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). The degree to which prejudice may be lessened by other remedial court action should also be considered. Id. Thus, the complaining *140 party should be granted relief on appeal only upon a showing of compelling prejudice, which the trial court could not alleviate in the absence of severance and which effectively denied the party a fair trial. [citations omitted].
See also State v. Brown, 228 N.J. Super. 211, 221, 549 A.2d 462 (App.Div. 1988) leave to appeal granted, 114 N.J. 497, 555 A.2d 618 (1989); State v. Sanchez, 224 N.J. Super. 231, 244-246, 540 A.2d 201 (App.Div. 1988) certif. den. 111 N.J. 653, 546 A.2d 561 (1988).

VII.
The Barretts claim that the trial judge abused his discretion by allowing the prosecutor to cross-examine their father with respect to his prior convictions which involved drug transactions and which, they assert, gave rise to an inference of their possession with intent to distribute drugs in this case, "like father like son." The father was called by Morant, and there was no abuse of discretion by the trial judge in permitting Morant to examine the Barretts' father concerning his involvement with defense witnesses in this case. Morant had a right to try to explain why defense witnesses were pointing the finger at him, and once called as a witness, the judge did not abuse his discretion in permitting the prosecutor to cross-examine the Barretts' father with reference to his prior convictions.[12]See State v. Balthrop, 92 N.J. 542, 546, 457 A.2d 1152 (1983) (improper exclusion of prior convictions on cross-examination of State's witness). During the prosecution's cross-examination of the Barrett's father and in his final instructions the trial judge *141 gave firm and clear limiting instructions with respect to the use of the prior convictions.
The Barretts suggest that Morant and the prosecutor conspired to have Morant call the Barretts' father so that the prosecutor could cross-examine and thereby prejudice them by creating an impression that the Barrett family was deeply involved in drug trafficking. However, nothing unholy flows from the cooperation of a defendant with the prosecutor, even when that cooperation inures to the admissibility of evidence against codefendants, provided the admission is proper and the State honors any agreement it makes. Cf., e.g., United States v. Addonizio 451 F.2d 49, 70-71 (3d Cir.1971), cert. den. 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); United States v. Addonizio, (Appeal of Gordon), 449 F.2d 100, 102-103 (3rd Cir.1971), cert. den. sub nom Gordon v. U.S., 404 U.S. 1058, 92 S.Ct. 737, 30 L.Ed.2d 746 (1972) (defendant did not object to introduction in joint trial of inculpatory grand jury statement against him to the alleged prejudice of codefendants against whom it was not admissible; conviction of declarant also affirmed in the absence of a record to support claim of agreement with prosecutor that he would be severed after foregoing defense). To the contrary, a defendant's cooperation with the prosecution is a mitigating factor in sentencing, N.J.S.A. 2C:44-1b(12), and that mitigation is not limited to the giving of a confession or assistance outside the courtroom. See N.J.S.A. 2C:44-1b(12).
The Barretts argue that the prosecutor's recommendation that Morant receive a probationary sentence reflects that there was a conspiracy by the prosecutor and Morant against them.[13] They also suggest that Morant's sentence and the sentence of *142 an unrelated defendant in an unrelated matter reflects undue disparity against them. However, Morant was convicted only of simple possession, while the Barretts were convicted of possession with intent to distribute, and while a judgment in the unrelated matter is presented to us, the background and facts regarding the unrelated defendant were not developed on the record.
With respect to his sentence, which Morant attacks as excessive despite the Barretts' arguments, we note that except for sentences which may be appealed by the State pursuant to N.J.S.A. 2C:44-1f(2), appellate courts cannot review lenient sentences. See State v. Lee, 235 N.J. Super. 410, 415, 563 A.2d 51 (App.Div. 1989); State v. Partusch, 214 N.J. Super. 473, 476, 519 A.2d 946 (App.Div. 1987). That fact makes it even more necessary for trial judges to impose the correct sentence in each case, regardless of appealability, to assure the goals of uniformity and lack of disparity. See, e.g., State v. Pillot, 115 N.J. 558, 560 A.2d 634 (1989); State v. Roth, 95 N.J. 334, 345-369, 471 A.2d 370 (1984).[14] It appears that the trial judge recognized this necessity in sentencing Morant. He expressly noted that the prosecutor's recommendation "surprised" him and that he had to be concerned with "proportionality." We *143 agree, and note its significance because the Barretts were convicted of a more serious offense for which they received a greater sentence. However, we do not address Morant's sentence further in light of the reversal of his conviction.
Given our scope of review and the quantity and quality of cocaine involved, we conclude that the sentences imposed on the Barretts are unassailable. See State v. Pillot, supra; State v. Ghertler, 114 N.J. 383, 555 A.2d 553 (1989); State v. Roth, supra, 95 N.J. at 364-365, 471 A.2d 370.
We do not believe any other issue raised by the Barretts warrants discussion. R. 2:11-3(e)(2).[15]
*144 The conviction of Morant is reversed and the matter is remanded for further proceedings. The convictions and sentences of the Barretts are affirmed.
NOTES
[1] We have consolidated these cases for purposes of this opinion.
[2] Ten pages of transcript of the motion to suppress are missing from the volumes submitted to us. None of the parties cited any of these pages in their briefs, and we conclude that the essential testimony on direct and cross-examination of Trooper Toms was available for review.
[3] One bag contained 111 grams of cocaine and the other 101.2 grams. The purity of the test sample was 79.7% pure free base, weighing 88.5 grams.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] At trial Morant also testified that he tried to kick a bottle of "Wild Turkey" under the left rear seat. He also made clear that he was not en route to a ski trip, as stated by him at the motion to suppress.
[6] After it was noted that Reginald Barrett's absent attorney was joining in the argument offered by his brother's counsel, the judge indicated that Morant's counsel "who has really got a real interest in this case is not here, that disturbs me more than anything."
[7] The judge's written opinion confirming this ruling was prepared after the case was tried. See State v. Barrett, supra, 220 N.J. Super. at 310, n. 1, 531 A.2d 1368.
[8] The Barretts are Morant's cousins. They claimed they had just picked him up after his discharge from the Marines in New York and were en route to ski in Pennsylvania. Morant denied that he was en route to such a trip and claimed the Barretts were driving him to New York when Reginald, after reaching the city, returned to New Jersey, made the stop at the pizzeria in Union City, Hudson County and, after picking them up, announced he was going to make another brief stop in Trenton, over Morant's objection, before taking him home to Queens. The prosecutor argued that all the defendants were incredible because the car was heading south on the Turnpike and away from the locations to which each defendant said he was heading. (At a motion for reconsideration of sentence, which was denied by the judge (although his full decision and order are not in the record), it was developed as a result of a report from an Assistant U.S. Attorney noting Reginald's cooperation, that Reginald had made the purchase in Union City and the ski trip defense was manufactured. Further, the Barretts' witness who rented the car pled guilty to perjury or false swearing).
[9] Based on the submissions it would have been more rational had the jury found Morant not guilty even if the Barretts were guilty, or vice versa, or all defendants guilty of possession with intent to distribute, or not guilty of any crime. Given the quantity involved and the testimony, the simple possession conviction may well reflect prejudice.
[10] We recognize the Barretts contend that the limiting instructions limited their summations and use of the evidence.
[11] While inconsistent defenses can be a basis for severance, we must review this case based on the record made, including the fact that all three defendants testified. Compare, e.g., DeLuna v. United States, 308 F.2d 140 (5th Cir.1962) reh'g den. 324 F.2d 375 (5th Cir.1963); see also State v. Freeman, 64 N.J. 66, 67-68, 312 A.2d 143 (1973) (sufficiency of charge); State v. Pickles, 46 N.J. 542, 566-567, 218 A.2d 609 (1966).
[12] This is particularly true because Morant claimed that the Barretts, through their father, were trying to defend themselves by implicating Morant. Morant contended that the Barretts decided to "point[] the finger at Jason Morant" and "pin it on him." Morant argued in summation that the Barretts manufactured picking up Morant for a ski trip and the Morant confession to witness Jack Lee who had just been discovered as a witness. Several witnesses for the Barretts testified about the plans for the trip to which the Barretts testified they were going to take. The father's role and credibility was a critical issue with respect to the credibility of witnesses for all defendants.
[13] Cooperation was not cited by Morant or the prosecutor at sentencing, and the record does not support the Barrett's claim. The presentence report recommended that Morant, a first offender, "be placed on probation with the special condition of incarceration." The prosecutor, after opposing defendant's motion for conditional discharge, stated that she "would submit on their recommendation" and "concur[] with the Probation Department recommendation" for probation with a period of incarceration, even though that recommendation was deemed "a fairly lenient one."
[14] With regard to negotiated pleas, see State v. Sainz, 107 N.J. 283, 526 A.2d 1015 (1987). The unrelated case to which the Barretts refer was resolved by plea, and they are correct that "[a] plea of guilty by a defendant or failure to so plead shall not be considered in withholding or imposing a sentence of imprisonment." N.J.S.A. 2C:44-1c(1). However, despite the showing of Reginald's cooperation with a United States Attorney and his brother's lack of adult record, the Barretts have made no argument to warrant our holding that their sentences should be reduced. See State v. Lee, supra. We also note that the judge gave Michael Barrett a lesser ineligibility term because of his remorse at sentencing. At the motion for reconsideration it was developed as a result of a report from a U.S. Attorney that Michael Barrett and Morant were "minor players" and "lesser involved" than Reginald who cooperated with the U.S. Attorney. See n. 8 supra. The Barretts' defense at trial turned out to be false.
[15] In his brief, Reginald Barrett contends:

POINT ONE THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE AND ILLEGAL.
POINT TWO THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE.
POINT THREE THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING EVIDENCE OF THE DEFENDANT'S FATHER'S CRIMINAL RECORD TO BE HEARD BY THE JURY.
POINT FOUR THE PROSECUTOR'S SUMMATION WAS BEYOND THE BOUNDS OF PROPRIETY REQUIRING A NEW TRIAL.
POINT FIVE THE TRIAL COURT ERRED IN REFUSING TO SEVER DEFENDANT'S CASE FROM CO-DEFENDANT MORANT'S CASE.
In his brief, Michael Barrett argues:
POINT ONE THE TRIAL COURT ERRED BY ADMITTING PRIOR DRUG-RELATED CONVICTIONS OF DEFENDANT'S FATHER, A WITNESS AT THE TRIAL, INTO EVIDENCE.
POINT TWO THE TRIAL COURT ERRED BY DENYING DEFENDANT'S PRETRIAL MOTION TO SEVER.
POINT THREE THE TRIAL COURT ERRED BY ADMITTING CO-DEFENDANTS' DRIVER'S LICENSES, CAR RENTAL AGREEMENT AND PICTURES OF 1984 CHEVROLET BLAZER INTO EVIDENCE.
POINT FOUR THE TRIAL COURT ERRED BY FAILING TO ADMIT A COPY OF THE BAIL AGREEMENT AND JASON MORANT'S ARREST REPORT INTO EVIDENCE.
POINT FIVE THE PROSECUTOR'S CONDUCT CLEARLY EXCEEDED THE BOUNDS OF PROPRIETY AND REQUIRES A REVERSAL OF DEFENDANT'S CONVICTION. (Not Raised Below).
POINT SIX THE COURT ERRED BY NOT GRANTING A MOTION FOR A NEW TRIAL.
POINT SEVEN THE TRIAL COURT ERRED BY FAILING TO SUPPRESS THE TWO BAGS OF COCAINE FOUND IN THE PASSENGER COMPARTMENT OF THE CAR. (Constitutional Issue).
POINT EIGHT THE CUMULATIVE ERROR DOCTRINE REQUIRES A REVERSAL OF DEFENDANT'S CONVICTION.
POINT NINE THE SENTENCE IMPOSED BELOW WAS MANIFESTLY EXCESSIVE AND ILLEGAL.
Reginald Barrett filed a pro se supplemental brief raising the same points as Michael.
In his reply brief Michael Barrett argues:
POINT ONE THE TRIAL COURT ERRED BY DENYING DEFENDANT'S PRETRIAL MOTION TO SEVER.
POINT TWO THE PROSECUTOR'S CONDUCT CLEARLY EXCEEDED THE BOUNDS OF PROPRIETY AND REQUIRES A REVERSAL OF DEFENDANT'S CONVICTION. (Not Raised Below).
POINT THREE THE COURT ERRED BY NOT GRANTING A MOTION FOR A NEW TRIAL
POINT FOUR THE TRIAL COURT ERRED BY FAILING TO SUPPRESS THE TWO BAGS OF COCAINE FOUND IN THE PASSENGER COMPARTMENT OF THE CAR.
POINT FIVE THE SENTENCE IMPOSED BELOW WAS MANIFESTLY EXCESSIVE AND ILLEGAL.
In light of the reversal of his convictions, we do not list the issues raised by Morant.