STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ARTHUR JOHNSON, DEFENDANT-APPELLANT.

Argued May 13, 1975—Decided October 8, 1975.

*Mr. John H. Ratliff,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Ms. Sara A. Friedman,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. This is a search and seizure case wherein defendant, who has been indicted for possession of narcotics and possession with intent to distribute, moved to suppress evidence found by the police during the search of an apartment where defendant kept some personal belongings. The State sought to justify the search on the basis of consent.[1] The trial judge granted the motion. The Appellate Division reversed and remanded the matter for redetermination on the record already made on the ground that the trial judge had applied improper standards in passing upon the consent issue. By leave granted defendant appeals. *R.* 2:2-2(b). We modify the Appellate Division ruling to the extent hereinafter indicated.

---

[1] According to the police witnesses, the consent was given by a woman who was defendant's fiancee and who occupied the apartment. Defendant's standing to challenge the search seems clear.

At the hearing on the motion to suppress, the State and defendant presented conflicting factual versions as to the circumstances leading up to the search and whether or not consent had been given. Defense counsel argued that the State had not proved "a voluntary type of waiver of one's Fourth Amendment right." The trial judge in ruling on the motion made no specific finding as to which version he found to be credible. He said he had weighed the testimony of all of the witnesses and was unable to conclude that the State had proved by clear and positive evidence that the consent was knowingly, intelligently, voluntarily and unequivocally given to search the apartment. He added that the knowledge aspect "goes to the knowledge of whether or not she had a right to refuse to have the apartment searched at all or knowledge of whether or not they are waiving their constitutional right against invasion of privacy."

In *Schneckloth v. Bustamonte,* 412 *U. S.* 218, 93 *S. Ct.* 2041, 36 *L. Ed.* 2d 854 (1973) the United States Supreme Court held that where the subject of a search is not in custody and the state attempts to justify the search on the basis of consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied, and that while knowledge of a right to refuse consent is one factor to be taken into account, it is not an indispensable element of an effective consent. 412 *U. S.* 248–249, 93 *S. Ct.* 2041.

*Schneckloth* rejected the contention that the validity of a consent to a search in a non-custodial situation should be measured in terms of waiver, and that the state should be required to show that there had been an intentional relinquishment of a known constitutional right. Instead, the court held that the test to be applied was one of voluntariness to be determined from the totality of the circumstances. *Id.* at 235-247, 93 *S. Ct.* 2041.

Based on *Schneckloth* the Appellate Division held that the yardstick used by the trial judge no longer represented

the measure to be applied in determining whether there had been a violation of Fourth Amendment rights and remanded the matter to the trial judge for redetermination of the motion to suppress on the record already made, using the standards set forth in *Schneckloth*.

▪ *Schneckloth* is controlling on state courts insofar as construction and application of the Fourth Amendment is concerned and is dispositive of defendant's federal constitutional argument. However, each state has the power to impose higher standards on searches and seizures under state law than is required by the Federal Constitution. *Cooper v. California*, 386 *U. S.* 58, 62, 87 *S. Ct.* 788, 17 *L. Ed. 2d* 730 (1967).

▪ The New Jersey Constitution of 1947, Art. I, par. 7, provides that "[T]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated * * *." While counsel for defendant did not contend, either on argument of the motion or on appeal, that our State constitutional provision against unreasonable searches should be interpreted to give the individual greater protection than is provided by the Fourth Amendment, this Court, *sua sponte*, posed the issue and afforded counsel the opportunity to submit supplemental memoranda on the question. The Court has the benefit of the additional arguments presented.[2]

▪ We conclude that under Art. I, par. 7 of our State Constitution the validity of a consent to a search, even in a non-custodial situation, must be measured in terms of waiver; i. e., where the State seeks to justify a search on the

---

[2] It is recognized that Art. I, par. 7, is taken almost verbatim from the Fourth Amendment and until now has not been held to impose higher or different standards than those called for by the Fourth Amendment. However, we have the right to construe our State constitutional provision in accordance with what we conceive to be its plain meaning. *R.* 3 :5–7, which establishes a procedure for the suppression of illegally seized evidence, applies to any search and seizure found to be unlawful, whether under federal or state law.

basis of consent it has the burden of showing that the consent was voluntary, an essential element of which is knowledge of the right to refuse consent.

Many persons, perhaps most, would view the request of a police officer to make a search as having the force of law. Unless it is shown by the State that the person involved knew that he had the right to refuse to accede to such a request, his assenting to the search is not meaningful. One cannot be held to have waived a right if he was unaware of its existence.

■ However, in a non-custodial situation, such as is here presented, the police would not necessarily be required to advise the person of his right to refuse to consent to the search. Our decision is only that in such a situation if the State seeks to rely on consent as the basis for a search, it has the burden of demonstrating knowledge on the part of the person involved that he had a choice in the matter.[3]

We agree that the motion should be remanded to the trial judge for redetermination on the record already made and such additional proofs as the parties may offer, but applying the standards heretofore set forth insofar as defendant's right under our State constitution to be secure against unreasonable searches is involved. On the remand, the trial judge should make specific findings as to the facts disputed at the hearing and as to knowledge by the occupant of her right to refuse consent so that a reviewing court may know precisely the basis of the ruling.

■ Except for the instant case, this decision is to have prospective effect, applying only to searches based on consent which take place after the date of this opinion.

SCHREIBER, J. (concurring). Obviously, as both the majority and dissenting opinions observe, because of the

---

[3] Several ways by which the State could satisfy this burden are detailed by Justice Marshall in his dissenting opinion in *Schneckloth, supra*, 412 *U. S.* at 286, 93 *S. Ct.* 2041.

United States Supreme Court opinion in *Schneckloth v. Bustamonte,* 412 *U. S.* 218, 93 *S. Ct.* 2041, 36 *L. Ed.* 2d 854 (1973), knowledge of a right to refuse consent to a search is not a prerequisite of an effective consent to validate a search under the Fourth and Fourteenth Amendments of the United States Constitution. The remaining issue is whether there has been a violation of Article I, ¶7 of the New Jersey Constitution which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated; ***." In other words, was the search unreasonable under all the circumstances? *Cf. State v. Davis,* 50 *N. J.* 16, 22 (1967); *United States v. Rabinowitz,* 339 *U. S.* 56, 70 *S. Ct.* 430, 94 *L. Ed.* 653 (1950); and *Cady v. Dombrowski,* 413 *U. S.* 433, 439, 93 *S. Ct.* 2523, 37 *L. Ed.* 2d 706 (1973) where the Court noted: "The ultimate standard set forth in the Fourth Amendment is reasonableness."

A search conducted after a voluntary consent is clearly reasonable. *State v. King,* 44 *N. J.* 346 (1965). Consent contemplates the exercise of a choice, and choice entails the opportunity to evaluate the available options. The right of self-decision is effectively safeguarded if the occupant of the premises knows that the search may be refused. This knowledge may be imputed from information furnished by the police. In the absence of that knowledge a search is unreasonable.

I would not, as the majority does, rationalize the problem in terms of waiver. Justice Black in *Green v. United States,* 355 *U. S.* 184, 191, 78 *S. Ct.* 221, 2 *L. Ed.* 2d 199 (1957) wrote: " 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law." The dissent, for example, utilizes one definition of the term, an intentional relinquishment or abandonment of a known right or privilege. See dissenting opinion, p. 361. In this context, one could logically contend that warnings should include the consequences of permitting the search as well as the right to have present an attorney. Wilberding, *"Miranda-*Type

Warnings for Consent Searches," 47 *North Dak. L. Rev.* 281, 284 (1971).

It is significant to note that none of the dissenting Justices in *Schneckloth v. Bustamonte, supra,* urged that *Miranda*-type warnings be required. The reasonableness of this position becomes apparent when recognition is given to the fact that the warnings in *Miranda v. Arizona,* 384 *U. S.* 436, 477, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966) apply only to *custodial* interrogations. It would be anomalous indeed to require *Miranda*-type warnings with respect to consent searches and not for Fifth Amendment non-custodial questioning. Such an approach would tend to cripple effective law enforcement and ignore the balancing concept inherent in determining what is "unreasonable."

I concur in the remand for the purposes enunciated by the majority.

PASHMAN, J. (dissenting). This case concerns the validity of a consent search conducted without a warrant by three members of the Newark Police Department's Narcotics Squad. After hearing sharply disputed testimony on the question of consent, the trial court granted defendant's motion to suppress. As the majority properly notes, the trial judge made no specific finding as to which factual version was credible, stating instead that he was unable to conclude that "the State has sustained the necessary burden by proving by clear and positive evidence that the consent was knowingly, intelligently, voluntarily and unequivocally given" to search the premises. The Appellate Division reversed and remanded, holding that the trial court had applied an improper standard in resolving the consent issue, "[t]he criterion is simply whether 'the consent was in fact voluntarily given and not the result of duress or coercion, express or implied.' " (quoting from *Schneckloth v. Bustamonte,* 412 *U. S.* 218, 248, 93 *S. Ct.* 2041, 36 *L. Ed.* 2d 854 (1973)). Today this Court in remanding the case for further findings by the trial court concludes that the *Schneckloth*

standard for resolving the consent issue is controlling as to the construction of the federal constitution but that this case is to be decided on the basis of a proper construction of the search and seizure provisions of the New Jersey Constitution. *Ante* at 352–353. While I agree with the conclusion of the majority that this case must be remanded for more explicit factual findings, I cannot subscribe to the reasoning of the Court insofar as it concerns the standard for determining the issue of consent to conduct a warrantless search under the New Jersey Constitution. Accordingly, I must dissent.

The Essex County Grand Jury charged defendant in a two-count indictment with possession of narcotics in violation of *N. J. S. A.* 24:21–20 (*Supp.* 1975–76), and possession of narcotics with intent to distribute in violation of *N. J. S. A.* 24-21-19 (a) (1) (Supp. 1975-76). The indictment resulted from a search of the apartment occupied by defendant's financee on the night of December 6, 1973. According to her testimony, she was in bed in her Newark apartment when the detectives knocked on her door seeking access to conduct a search. Although the witness testified that she did not at any time give the officers permission to enter her apartment, one of the detectives testified that when the officers stated the purpose of their visit she invited them in to satisfy their curiosity. According to the officers, they first explained to the witness that they suspected that defendant was dealing in narcotics from the apartment and then administered the warnings required by *Miranda v. Arizona*, 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966). After the witness stated that she understood her rights, the officers testified that she denied any knowledge of narcotics in her apartment and then led them into her apartment where an orderly search was conducted. The officers added that the witness also directed them to a dresser drawer in which defendant kept his personal items where, among other items, a plastic bag containing a white powder was discovered. After the

officers repeated the *Miranda* warnings, the witness identified the items as belonging to defendant.

In addition to denying that she had given the officers permission to enter her apartment, the witness stated that the detectives did not explain the purpose of their visit prior to gaining entry but merely asked her if there were any narcotics on the premises. The witness also stated that she was only given the *Miranda* warnings once and that was *after* the officers had entered her apartment and had begun searching. Finally, the witness stated that no one asked her where defendant kept his personal belongings and that she did not observe anything taken from the dresser drawer. Defendant was arrested when he subsequently returned to the apartment.

Prior to the United States Supreme Court's resolution of the consent issue in *Schneckloth, supra,* this Court in *State v. King,* 44 *N. J.* 346 (1965) emphasized that when an individual consents to a search of his premises he relinquishes important constitutional safeguards. Defendant in King had been convicted of armed robbery and had moved unsuccessfully prior to trial to suppress a gun, cap and coat which had been found in a search of an apartment shared by defendant and another. The trial court denied defendant's motion to suppress, finding that defendant and the lessee of the apartment had consented to the search. 44 *N. J.* at 351. Although we concluded that sufficient evidence was before the trial court to warrant that finding, we made it clear that the implications of such a conclusion require that a heavy burden be placed on the State in showing consent:

The primary question on this appeal is whether the defendant voluntarily gave his consent to the search of the apartment. The general principles of law which govern this issue are well settled. When an accused consents to a search of his premises, he relinquishes the Fourth Amendment protection which prohibits unreasonable searches and seizures. Implicit in the very nature of the term "consent" is the requirement of voluntariness. To be voluntary the consent must be "unequivocal and specific" and "freely and intelligently given." The burden of proof is on the State to establish by clear and positive testimony that the consent was so given. [44 *N. J.* at 352 (citations omitted)]

See also *State v. Rice,* 115 *N. J. Super.* 128, 131 (App. Div. 1971) ; *State v. Guadiosi,* 97 *N. J. Super.* 565, 571-72 (App. Div. 1967) ; *State v. Price,* 108 *N. J. Super.* 272, 282 (Law Div. 1970).

The Appellate Division has concluded that the standards governing consent searches set forth in *King* and the cases which have relied upon it have been substantially eclipsed by the Supreme Court's decision in *Schneckloth v. Bustomonte, supra.* I cannot agree. The majority of this Court while rejecting the *Schneckloth* view that knowledge by the person to be searched of his right to refuse is not a prerequisite for a valid consent search, adopts a standard for determining validity which in my view falls short of what is necessary to protect the privacy rights of the consenting individual. Accordingly, I cannot join the majority opinion and my reasons follow.

Defendant in *Schneckloth* was convicted in a California court after stolen checks were discovered in a car in which he was a passenger. The search was conducted pursuant to the consent of one of the occupants after the car was stopped for displaying inoperative lights. Defendant's conviction was affirmed on appeal, *People v. Bustamonte,* 270 *Cal. App.* 2d 648, 76 *Cal. Rptr.* 17 (Ct. App. 1969). Thereafter defendant sought a writ of habeas corpus in the federal district court. It was denied, but on appeal the Ninth Circuit vacated the order denying the writ, reasoning that since consent is a waiver of constitutional rights, the State must show not only the absence of coercion, but also that the individual knew that consent could have been withheld. *Bustamonte v. Schneckloth,* 448 F. 2d 699 (9 Cir. 1971). See also *Schoepflin v. United States,* 391 *F.* 2d 390 (9 Cir. 1968), *cert.* den. 393 *U. S.* 865, 89 *S. Ct.* 146, 21 *L. Ed.* 2d 133 (1968) ; *Cipres v. United States,* 343 *F.* 2d 95 (9 Cir. 1965).

On appeal the United States Supreme Court reversed the Court of Appeals by adopting a "totality of the circumstances" test to govern the validity of consent searches authorized by subjects not in custody:

Our decision today is a narrow one. We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.[1] [412 *U. S.* at 248–49, 93 S. Ct. at 2059 (footnote omitted)]

In concluding that consent to conduct a search must be determined by a voluntariness standard which in turn requires an evaluation of all the attendant circumstances, the Court resorted to the analysis employed in a line of cases which explored the voluntariness of a defendant's confession gauged against the requirements of the fourteenth amendment, *e. g., Davis v. North Carolina,* 384 *U. S.* 737, 86 *S. Ct.* 1761, 16 *L. Ed.* 2d 895 (1966); *Reck v. Pate,* 367 *U. S.* 433, 81 *S. Ct.* 1541, 6 *L. Ed.* 2d 948 (1961); *Payne v. Arkansas,* 356 *U. S.* 560, 78 *S. Ct.* 844, 2 *L. Ed.* 2d 975 (1958); *Fikes v. Alabama,* 352 *U. S.* 191, 77 *S. Ct.* 281, 1 *L. Ed.* 2d 246 (1957); *Haley v. Ohio,* 332 *U. S.* 596, 68 *S. Ct.* 302, 92 *L. Ed.* 224 (1948); *Ashcraft v. Tennessee,* 322 *U. S.* 143, 64 *S. Ct.* 921, 88 *L. Ed.* 1192 (1944); *Chambers v. Florida,* 309 *U. S.* 227, 60 *S. Ct.* 472, 84 *L. Ed.* 716 (1940). 412 *U. S. at* 223-26, 93 *S. Ct.* 2041, 36 *L. Ed.* 2d 854. After observing that none of the cases turned on the presence or absence of a single factor and that in none had the Court construed the fourteenth amendment to require a showing that defendant knew he had a right to refuse to

---

[1]The Court was careful to note that its decision only applied to subjects who purportedly consented to a search in non-custodial situations. See 412 *U. S.* at 240 n. 29, 93 *S. Ct.* at 2055; 412 *U. S.* at 247 n. 36, 93 *S. Ct.* at 2058. For a collection of the pre-*Schneckloth* cases dealing with consent searches in the custodial context, see Annotation, "Validity of consent to search given by one in custody of officers," 9 *A. L. R.* 3d 858 (1966).

answer questions, 412 *U. S.* at 226–27, 93 *S. Ct.* 2041, the Court concluded that in the context of a consent search:

> While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.[2] [412 *U. S.* at 227, 93 *S. Ct.* at 2048]

In deciding *Schneckloth,* the majority rejected a waiver analysis of the consent issue, *i.e.,* that by consenting to a search an individual waives his rights under the fourth and fourteenth amendments, a waiver which may be established only by a showing by the state of "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 *U. S.* 458, 464, 58 *S. Ct.* 1019, 1023, 82 *L. Ed.* 1461 (1938). Observing that *Johnson* involved an alleged waiver of the right to counsel in a federal criminal trial, the Court emphasized that "[a]lmost without exception" the *Johnson* standard has only been applied to those rights which guarantee a criminal defendant a fair trial. 412 *U. S.* at 237, 93 *S. Ct.* 2041. The Court, however, declined to extend the knowing and intelligent waiver standard to the search and seizure situation:

> There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a "knowing" and "intelligent" waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.[3] [412 *U. S.* at 241, 93 *S. Ct.* at 2055]

---

[2]The Court also found nothing in its previous decisions suggesting the requirement of proof that defendant knew he had a right to refuse to consent to a search. 412 *U. S.* at 234, 93 S. Ct. 2041. See *Bumper v. North Carolina,* 391 *U. S.* 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968) ; *Johnson v. United States,* 333 *U. S.* 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948) ; *Davis v. United States,* 328 *U. S.* 582, 66 S. Ct. 1256, 90 L. Ed. 1453 (1946) ; *Amos v. United States,* 255 *U. S.* 313, 41 S. Ct. 266, 65 L. Ed. 654 (1921).

[3]Although the Court's analysis of the consent issue was premised on concepts of voluntariness, the majority specifically rejected an analogy

Three members of the Court were not persuaded by the reasoning of the majority, and in separate dissenting opinions underscored the defects in the analysis and result reached by the Court. Emphasizing that the search could only be justified on the basis of consent, Justice Brennan was unable to to comprehend how a citizen can waive a right which he is unaware exists:

> The Court holds today that an individual can effectively waive his right even though he is totally ignorant of the fact that, in the absence of his consent, such invasions of his privacy would be constitutionally prohibited. It wholly escapes me how our citizens can meaningfully be said to have waived something as precious as a constitutional guarantee without ever being aware of its existence. In my view, the Court's conclusion is supported neither by "linguistics," nor by "epistemology," nor, indeed, by "common sense." I respectfully dissent. [412 *U. S.* at 277, 93 *S. Ct.* at 2073 (Brennan, J. dissenting)]

Justice Marshall found the opinion of the Court "misleading" in several respects: (1) the standard selected by the Court was derived from a justification of consent searches which is inconsistent with the Court's treatment of other exceptions to the fourth amendment; (2) the voluntariness standard was developed in a very different context implicating different policies; and (3) the majority mischaracterized the Court's prior cases dealing with consent searches. 412 *U. S.* at 280, 93 *S. Ct.* 2041 (Marshall, J. dissenting). Characterizing his approach to the problem as "straightforward and * * * obvious," Justice Marshall had difficulty accepting the proposition that a decision made without knowledge of all the alternatives could be characterized as a choice at all. 412 *U. S.* at 284, 93 *S. Ct.* 2041 (Marshall, J.

to *Miranda v. Arizona*, 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 L. Ed. 2d 694 (1966), concluding that "[t]he considerations that informed the Court's holding in Miranda are simply inapplicable in the present case." 412 *U. S.* at 246, 93 S. Ct. at 2058. In the Court's view, consent searches normally occur on the subject's own territory and consequently "the specter of incommunicado police interrogation in some remote station house is simply inapposite." [412 *U. S.* at 247, 93 S. Ct. at 2058]

dissenting). Consequently, Justice Marshall would hold that at a minimum the prosecution may not rely on consent to justify a search unless the subject knew that he could refuse. Proceeding from this premise, Justice Marshall concluded that a fair allocation of the burden of proof would place the onus of showing such knowledge on the prosecution. Observing that there are several ways for the state to discharge that burden, Justice Marshall pointed out that one way of proving knowledge would be evidence that prior to conducting the search, the police notified the subject that he had a right to refuse:

The burden on the prosecutor would disappear, of course, if the police, at the time they requested consent to search, also told the subject that he had a right to refuse consent and that this decision to refuse would be respected. The Court's assertions to the contrary notwithstanding, there is nothing impractical about this method of satisfying the prosecution's burden of proof.4 [412 *U. S.* at 286, 93 S. Ct. at 2078 (Marshall, J. dissenting (footnote omitted)]

In response to the majority's references to practicality, Justice Marshall expressed the fear that what in reality

---

4Justice Marshall added:

The Court contends that if an officer paused to inform the subject of his rights, the informality of the exchange would be destroyed. I doubt that a simple statement by an officer of an individual's right to refuse consent would do much to alter the informality of the exchange, except to alert the subject to a fact that he surely is entitled to know. It is not without significance that for many years the agents of the Federal Bureau of Investigation have routinely informed subjects of their right to refuse consent, when they request consent to search. Note, Consent Searches: A Reappraisal After Miranda v. Arizona, 67 Col. L. Rev. 130, 143 n. 75 (1967) (citing letter from J. Edgar Hoover). The reported cases in which the police have informed subjects of their right to refuse consent show, also, that the information can be given without disrupting the casual flow of events. See, e. g., United States v. Miller, 395 F. 2d 116 (C. A. 7 1968). What evidence there is, then, rather strongly suggests that nothing disastrous would happen if the police, before requesting consent, informed the subject that he had a right to refuse consent and that his refusal would be respected. [412 *U. S.* at 287–88, 93 *S. Ct.* at 2078 (Marshall, J. dissenting) (footnote omitted)]

motivated the Court was the continued ability of the authorities to take advantage of an individual's ignorance of his rights thereby accomplishing by "subterfuge" what could not be achieved by relying only on the "knowing relinquishment of constitutional rights." 412 *U. S.* at 288, 93 *S. Ct.* 2041 (Marshall, J. dissenting). In his view, the ultimate effect of the Court's decision was a realignment of the balance struck by the framers between the interests of the police and basic rights as a result of the majority's own convictions about the needs of law enforcement:

In the final analysis, the Court now sanctions a game of blindman's buff, in which the police always have the upper hand, for the sake of nothing more than the convenience of the police. But the guarantees of the Fourth Amendment were never intended to shrink before such an ephemeral and changeable interest. The Framers of the Fourth Amendment struck the balance against this sort of convenience and in favor of certain basic civil rights. It is not for this Court to restrike that balance because of its own views of the needs of law enforcement officers. I fear that that is the effect of the Court's decision today. [412 *U. S.* at 289–90, 93 S. Ct. at 2079 (Marshall, J. dissenting)]

Despite the substantial shortcomings of the standard selected by the *Schneckloth* majority,[5] insofar as it represents

[5]See Wefing & Miles, "Consent Searches and the Fourth Amendment: Voluntariness and Third Party Problems," 5 *Seton Hall L. Rev.* 211, 212 (1974), where the authors summarize *Schneckloth* as follows:

*Bustamonte* is a strained, self-contradictory opinion which not only represents a drastic departure from the Court's own previous cases, but also undermines a substantial body of prior federal case law which reflected a sustained and sometimes creative effort to develop a coherent consent-search doctrine. In effect, this case eliminated the "waiver" requirement, a concept which has emerged as a critical factor in Supreme Court decisions and which has been heavily relied upon by the lower federal courts. Rather, it adopted the "totality of the circumstances" test which was employed primarily by the California state courts and which consisted of a more relaxed voluntariness standard than that employed by the federal courts. Further, the *Bustamonte* Court equated the "voluntariness" of consent obtained for a search in a non-custodial setting with the "voluntariness" of a confession elicited as the result of

the Supreme Court's construction of the federal constitution, we are bound by it. As the majority in the present case correctly notes, *Ante* at 353 the Supreme Court recently spoke to this issue in *Oregon v. Hass*, 420 *U. S.* 714, 718, 95 *S. Ct.* 1215, 1219, 43 *L. Ed.* 2d 570, 576 (1975).

[O]f course, a State may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them.6 [emphasis in original; footnote omitted]

I have previously recognized this limitation in my separate opinion in *State v. Miller*, 67 *N. J.* 229, 241 (1975) (Pashman, J. dissenting).

Recognition of this principle, however, does not dictate an uncritical acceptance of the standards selected by the Supreme Court under the fourth amendment governing the validity of consent searches. We remain free to apply criteria which afford the individual greater safeguards against official intrusion as a matter of state law. Indeed, this concept has been emphasized specifically in the search and seizure context:

Our holding, of course, does not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so. [*Cooper v. California*, 386 *U. S.* 58, 62, 87 *S. Ct.* 788, 791, 17 *L. Ed.* 2d 730 (1967)]

See also *Oregon v. Hass, supra* 420 *U. S.* at 719, 95 *S. Ct.* at 1219, 43 *L. Ed.* 2d at 576 n. 4; *Sibron v. New York*, 392 *U. S.* 40, 60-61, 88 *S. Ct.* 1889, 20 *L. Ed.* 2d 917 (1968);

police interrogation. In so doing, it applied to the fourth amendment consent issue a line of confession cases involving the problem of voluntariness which had been rendered obsolete by *Miranda v. Arizona*, and arrived at the conclusion that a person could voluntarily waive fourth amendment rights even without knowledge that they existed. [Footnotes omitted]

6See also the Court's commentary on the observations of the Oregon Supreme Court in *State v. Florance, Or.*, 527 *P.* 2d 1202 (1974). 420 *U. S.* at 719, n. 4, 95 *S. Ct.* at 1219, 43 *L. Ed.* 2d at 576.

*State v. Miller, supra,* 67 *N. J.* at 242 (Pashman, J. dissenting).

Since our Constitution expressly protects the citizens of this State from unreasonable searches and seizures,[7] I would construe *N. J. Const.* (1947), Art. I, ¶ 7 to require the State to affirmatively demonstrate that the subject of a consent search knew that he had a right to withhold his consent and that his decision would be respected by the authorities. This is the plain implication of our decision in *State v. King, supra,* when we spoke in terms of consent freely and intelligently given. An intelligent choice presupposes an awareness of all the available alternatives.

I also believe that the arrival of officers at the door of one's residence, particularly at night, for the purpose of conducting a search has an inherently coercive effect upon the occupant. *Cf. Bumper v. North Carolina,* 391 *U. S.* 543, 548–49, 88 *S. Ct.* 1788, 20 *L. Ed.* 2d 797 (1968). Accordingly, I would hold that the police must discharge their burden of proof on the issue of the subject's knowledge by showing that the one from whom consent was elicited was advised that he had a right to refuse to consent, that his refusal would be respected, and that anything uncovered by the search could be used in evidence against him. In this respect, I agree with the observations of Justice Marshall in his dissent in *Schneckloth, supra,* that such a warning would not unduly disrupt police procedures by destroying the informality of the exchange. See note 4, *supra.* In any event, the warning would only advise the subject of facts which he is clearly entitled to know.

---

[7] *N. J. Const.* (1947), Art. I, ¶ 7 provides as follows:

7. Freedom from unreasonable searches and seizures; warrant

7. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

I also appreciate the fact that many of the courts which have considered the problem have rejected the warning approach. See *Schneckloth, supra,* 412 *U. S.* at 231 nn. 13, 14, 93 *S. Ct.* 2041, 36 *L. Ed.* 2d 854, see also *State v. McKnight,* 52 *N. J.* 35, 53 n. 4 (1968). Prior to *Schneckloth,* however, this view was by no means universally accepted. See *Perkins v. Henderson,* 418 *F.* 2d 441, 442 (5 Cir. 1969); *United States v. Nikrasch,* 367 *F.* 2d 740, 744 (7 Cir. 1966); *United States v. Moderacki,* 280 *F. Supp.* 633, 636 (D. Del. 1968); *United States v. Blalock,* 255 *F. Supp.* 268, 269-70 (E. D. Pa. 1966). See also *United States v. Fisher,* 329 *F. Supp.* 630, 634-35 (D. Minn. 1971); Wefing & Miles, "Consent Searches and the Fourth Amendment: Voluntariness and Third Party Problems," 5 *Seton Hall L. Rev.* 211, 251-52 (1974); Note, 67 *Colum. L. Rev.* 130, 146-48 (1967). Indeed, the American Law Institute has recommended the administration of such warnings in its *Model Code of Pre-arraignment Procedures*:

(2) *Required Warning to Persons Not in Custody or Under Arrest.* Before undertaking a search under the provisions of this Article an officer present shall inform the individual whose consent is sought that he is under no obligation to give such consent and that anything found may be taken and used in evidence.

(3) *Required Warning to Persons in Custody or Under Arrest.* If the individual whose consent is sought under Subsection (1) is in custody or under arrest at the time such consent is offered or invited, such consent shall not justify a search and seizure under Section SS 240.1 unless in addition to the warning required by Subsection (2), such individual has been informed that he has the right to consult an attorney, either retained or appointed, and to communicate with relatives or friends, before deciding whether to grant or withhold consent. [*Model Code of Pre-arraignment Procedure,* § SS 240.2(2), (3) (Proposed Official Draft 1975)]

I find it inconceivable and incomprehensible to suppose that an individual can be said to have relinquished privileges as fundamental as those embodied in our constitutional guarantees against unreasonable searches and seizures unless it clearly and unmistakably appears that the subject of the

search knew that he did not have to submit to the official request. *Schneckloth, supra,* cannot withstand close scrutiny when it treats that knowledge as merely one factor to be considered in determining the validity of a consent search. The majority's formulation falls short of requiring an express warning to the individual as to his rights. In my judgment, such approaches merely pay lip service to the subject's awareness of his rights in an effort to accommodate the convenience of law enforcement at the expense of important personal freedoms. I am distressed that the approach of the majority does not adequately protect these freedoms. I must respectfully dissent.

SCHREIBER, J., concurring in result.

*For modification and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD, and SCHREIBER and Judge CONFORD—6.

*Dissenting*—Justice PASHMAN—1.