246 N.J. Super. 72 (1990)
586 A.2d 876
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
JESSE ELLIS AND VERNON KELLY, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal), Union County.
Decided October 12, 1990.
*74 Raymond Stine and Steven J. Kaflowitz for plaintiff (Edward J. Tucker, Acting Prosecutor of Union County, Attorney).
Daniel Warshawsky for defendant Jesse Ellis.
Wanda Moore for defendant Vernon Kelly.
TRIARSI, J.S.C.
On October 1, 1989, the narcotics unit, Tucson, Arizona airport detail, received an anonymous tip that two black males would transport narcotics aboard American Airlines flight no. 230 bound for Newark International Airport, Newark, New Jersey. The Arizona police believed that both men, later identified as Jessie Ellis and Vernon Kelly, had purchased one-way tickets to Newark airport and had refused to place identification tags on their suitcases when asked to do so by airline personnel.
This information was communicated by telephone to the port authority police at Newark International Airport, who provided it to Detective Joseph Bienkowski, a 23-year veteran of the Criminal Investigations Bureau. Detective Bienkowski, in turn, contacted the United States Customs Office to conduct a K-9 screening of all the luggage from flight no. 230. Detective Bienkowski and other police from the DEA and port authority participated in the investigation. The officer observed the K-9 dog sniff each bag before it was placed on the conveyor belt. The dog reacted positively to four bags. Immediately following the dog's reaction, Detective Bienkowski placed a "dummy bag" ahead of the four bags in question. It is common practice for port authority officers to place "dummy bags" ahead of suspected contraband bags to alert plainclothes officers waiting at the baggage carousel as to which passengers and bags to observe.
Detective Bienkowski went to the luggage claim area for the aircraft in question and joined several other plainclothes agents *75 who were watching that area. Ellis and Kelly claimed the four bags in question and began to exit the baggage area.
As Ellis and Kelly walked toward the terminal doors, Detective Bienkowski and the other officers identified themselves as police officers and both men placed the bags on the floor. Defendants were asked for their permission to have their four bags searched and were informed that they had the right to refuse the search. Kelly stated, "They're not our bags. You can search them." Ellis, standing beside Kelly, did not answer and remained silent throughout the search. The luggage was opened and the four bags contained approximately 100 pounds of marijuana divided into five packages of approximately 20 pounds a package. Ellis and Kelly were then placed under arrest.
Defendants Kelly and Ellis were indicted for possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(a)(1). Ellis moved to suppress the evidence of the warrantless search. The motion was joined by Kelly.
The State based its justification for the warrantless search on three grounds. First, totality of the circumstances that gave Detective Bienkowski probable cause to search defendants' bags. The State later abandoned the probable cause argument based upon the United States Supreme Court's decision in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The State concluded that although probable cause to search and arrest did exist, no exigent circumstances were present to justify a warrantless search of the luggage. The United States Supreme Court has delineated suitcases as areas in which one has a reasonable expectation of privacy and stressed that "the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them." Id. at 764, 99 S.Ct. at 2593. Furthermore, where the police "without endangering themselves or risking loss of the evidence lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search *76 thereof until after judicial approval has been obtained. In this way constitutional rights of suspects to prior judicial review of searches will be fully protected." Id. at 766, 99 S.Ct. at 2594.
Next, the State attempted to prove that Kelly and Ellis abandoned their Fourth-Amendment property interest in the bags when they placed their luggage down.
The State relied on the theory of "abandonment of property" in the context of the Fourth Amendment. The focal point of this argument centered on State v. Farinich, 179 N.J. Super. 1, 430 A.2d 233 (App.Div. 1981), aff'd o.b. 89 N.J. 378, 446 A.2d 120 (1982), which held that "a defendant `abandons' property when he voluntarily discards, leaves behind or otherwise relinquishes his interest in the property in question so that he can no longer retain a reasonable expectation of privacy to it at the time of the search." Id. at 6, 430 A.2d 233. It is not necessary for a defendant to take some affirmative act indicating a denial of ownership in order to be held to have voluntarily abandoned property. Id. at 7, 430 A.2d 233.
This court concurs with defense counsel that Ellis' and Kelly's actions of momentarily putting their luggage down can not be construed as a relinquishment of their property interest in their luggage. When approached by the police, each defendant was carrying luggage that weighed approximately 50 pounds. After the police stopped defendants, they put the bags down. This court holds that the placing of the luggage on the floor of the airport terminal by defendants was not an abandonment of same. The facts of the instant matter differ from those in State v. Farinich where defendants dropped their luggage, fled and were found to have abandoned their interest in their luggage. The court holds that Kelly's verbal consent to the search was not abandonment of the property.
Lastly, the State submits that the statements, "They're not our bags. You can search them." made by Kelly, together with the silence, cooperation and lack of any objection either to Kelly's statement or the police search of the luggage on the *77 part of Ellis, constituted a lawful consent to search by both defendants. The New Jersey State Supreme Court has recognized that a "consent sufficient to avoid the necessity of a warrant may be express or implied from the circumstances." State v. Koedatich, 112 N.J. 225, 262, 548 A.2d 939 (1988).
This court acknowledges that the constitutional standard that must be applied in sustaining a search based upon a waiver of the warrant requirement by consent is exacting. A valid consent to a search must be "clear, knowing, voluntary, unequivocal and express." State v. Sugar, 100 N.J. 214, 234, 495 A.2d 90 (1985). Under provisions of the New Jersey Constitution validity of consent to search, even in a noncustodial situation, must be measured in terms of waiver, an essential element of which is knowledge of right to refuse consent. State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975). This court holds that defendant Kelly has satisfied all requirements necessary for a valid consent to search as set forth in Sugar and Johnson. With regard to Kelly's statement and its effect upon co-defendant Ellis, the court has considered the case of U.S. v. Canada, 527 F.2d 1374 (9th Cir.1975) in which the appellant and her companion, who was carrying appellant's suitcase, were checking appellant's carry-on baggage at the Detroit Metropolitan Airport. The airlines security guard informed appellant's friend that it was necessary to see what was inside of the suitcase. Neither the appellant nor her companion replied. The court held that the security guard was fully justified in assuming she had the consent of both because the appellant and her friend had remained silent when they had been asked for permission to open the suitcases.
The holding and factual scenario in Canada is particularly applicable to the case at bar. This court holds that Ellis' silence and refusal to object to the statement "they're not our bags" and subsequent failure to object to the actual police search of the luggage constituted a valid and lawful consent to search by acquiescence.
*78 Additionally, Kelly's statement is clearly admissible against Ellis' under Evid.R. 63(9)(b) of the New Jersey Rules of Evidence which permits a statement to be admitted against a party as a vicarious admission if the statement was made while the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan, even if the plan was frustrated. Statements made by co-defendants which qualify as admissible hearsay under Evid.R. 63 (other than Evid.R. 63[10]) may be properly used against a non-declaring defendant in a criminal case. State v. Phelps, 96 N.J. 500, 507-508, 476 A.2d 1199 (1984).
Defendants' motions to suppress the evidence are denied for the reasons set forth in this opinion.