637 A.2d 1290

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. VERNON ALAN KELLEY, DEFENDANT–
APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JESSE RAY ELLIS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 11, 1994—Decided March 1, 1994.

Before Judges SKILLMAN and KESTIN.

*Zulima V. Farber*, Public Defender, attorney for appellants (*Diane Toscano*, Assistant Deputy Public Defender, of counsel and on the brief for appellant Vernon Alan Kelley; *William Welaj*, Designated Counsel, of counsel and on the brief for appellant Jesse Ray Ellis).

*Andrew K. Ruotolo, Jr.*, Union County Prosecutor, attorney for respondent (*Steven J. Kaflowitz*, Assistant Prosecutor, of counsel

and on the brief in A–2275–91T4; *John G. Esmerado,* Assistant Prosecutor, of counsel and on the brief in A–6541–91T4).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Defendants were indicted for possession of marijuana, in violation of *N.J.S.A.* 2C:35–10a(3), and second degree possession of marijuana, with the intent to distribute, in violation of *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(10). Defendants filed a motion to suppress, which the trial court denied for the reasons expressed in a written opinion reported at 246 *N.J.Super.* 72, 586 *A.*2d 876 (1990).

Ellis subsequently pled guilty pursuant to a plea bargain to possession of marijuana with the intent to distribute, and the trial court sentenced him to an eight year term of imprisonment. The court also suspended Ellis' driver's license for six months and imposed a $1,000 DEDR penalty, $50 lab fee and $30 VCCB penalty.

Kelley was found guilty by a jury of both charges. The court sentenced him to a seven year term of imprisonment for possession of marijuana with the intent to distribute and merged his conviction for possession of marijuana. The court also suspended Kelley's driver's license for twelve months and imposed a $2,000 DEDR penalty, $50 lab fee and $30 VCCB penalty.

Defendants have filed separate notices of appeal, which we now consolidate.

On his appeal, Kelley makes the following arguments:

I. THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT COMMITTED ANY OF THE CHARGED OFFENSES.

II. THE STATE WAS IMPROPERLY ALLOWED TO IMPEACH DEFENDANT EXTRINSICALLY ON AN IRRELEVANT, COLLATERAL MATTER.

III. THE PROSECUTOR'S COMMENTS IN SUMMATION, IN WHICH HE BOLSTERED THE CREDIBILITY OF DETECTIVE BIENKOWSKI, AND COMMENTED AT LENGTH ON THE DEFENDANT'S RESPONSES TO THE STATE'S CROSS–EXAMINATION ON PURELY COLLATERAL MAT-

TERS, DENIED DEFENDANT A FAIR TRIAL. *U.S. CONST.* AMENDS. VI, XIV; *N.J. CONST.* (1947) ART. I, PARS. 9, 10. (Raised in part below).

IV. THE IMPOSITION OF THE PRESUMPTIVE SENTENCE ON A THIRTY YEAR OLD MAN WITH NO PRIOR CRIMINAL RECORD WAS MANIFESTLY EXCESSIVE.

On his appeal, Ellis makes the following arguments:

I. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO SUPPRESS.

II. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

The only argument which requires discussion is Ellis' argument that the trial court should have granted his motion to suppress. Defendants' other arguments are clearly without merit and do not require discussion. *R.* 2:11–3(e)(2). We conclude that Ellis' motion to suppress was properly denied, but we reach this conclusion for different reasons than the trial court.

The trial court made the following findings of fact:

On October 1, 1989, the narcotics unit, Tucson, Arizona airport detail, received an anonymous tip that two black males would transport narcotics aboard American Airlines flight no. 230 bound for Newark International Airport, Newark, New Jersey. The Arizona police believed that both men, later identified as Jessie Ellis and Vernon Kelly, had purchased one-way tickets to Newark airport and had refused to place identification tags on their suitcases when asked to do so by airline personnel.

This information was communicated by telephone to the port authority police at Newark International Airport, who provided it to Detective Joseph Bienkowski, a 23–year veteran of the Criminal Investigations Bureau. Detective Bienkowski, in turn, contacted the United States Customs Office to conduct a K–9 screening of all the luggage from flight no. 230. Detective Bienkowski and other police from the DEA and port authority participated in the investigation. The officer observed the K–9 dog sniff each bag before it was placed on the conveyor belt. The dog reacted positively to four bags. Immediately following the dog's reaction, Detective Bienkowski placed a "dummy bag" ahead of the four bags in question. It is common practice for port authority officers to place "dummy bags" ahead of suspected contraband bags to alert plainclothes officers waiting at the baggage carousel as to which passengers and bags to observe.

Detective Bienkowski went to the luggage claim area for the aircraft in question and joined several other plainclothes agents who were watching that area. Ellis and Kelly claimed the four bags in question and began to exit the baggage area.

As Ellis and Kelly walked toward the terminal doors, Detective Bienkowski and the other officers identified themselves as police officers and both men placed the bags on the floor. Defendants were asked for their permission to have their four bags searched and were informed that they had the right to refuse the search.

Kelly stated, "They're not our bags. You can search them." Ellis, standing beside Kelly, did not answer and remained silent throughout the search. The luggage was opened and the four bags contained approximately 100 pounds of marijuana divided into five packages of approximately 20 pounds a package. Ellis and Kelly were then placed under arrest.

[246 *N.J.Super.* at 74–75, 586 *A.*2d 876.]

These findings are supported by substantial credible evidence. *See State v. Alvarez,* 238 *N.J.Super.* 560, 564, 570 *A.*2d 459 (App.Div.1990).

The trial court rejected the State's argument that defendants "abandoned" their four bags when they placed them on the floor of the terminal and Kelley said, "[t]hey're not our bags." *Id.,* 246 *N.J.Super.* at 76, 586 *A.*2d 876. However, the court agreed with the State's contention that Kelley voluntarily consented to the search of the bags. The trial court also ruled that Ellis acquiesced in that consent, reasoning that "Ellis' silence and refusal to object to the statement 'they're not our bags' and subsequent failure to object to the actual police search of the luggage constituted a valid and lawful consent to search by acquiescence." *Id.* at 77, 586 *A.*2d 876.

Ellis does not dispute the trial court's holding that Kelley validly consented to the police officers' search of the two bags Kelley had been carrying. However, Ellis argues that the State failed to show that Kelley had "common authority" over the two bags Ellis had been carrying and thus Kelley's consent to search did not extend to those bags. Ellis also argues that the State failed to show circumstances which would justify a finding that he impliedly acquiesced in Kelley's consent to search the bags.

Consent to a search may be obtained not only from the owner of the property to be searched but also "from a third party who possesses common authority over the property, see *United States v. Matlock,* 415 *U.S.* 164, 94 *S.Ct.* 988, 39 *L.Ed.*2d 242 (1974), or from a third party whom the police reasonably believe has authority to consent, see *Illinois v. Rodriguez,* 497 *U.S.* 177, 110 *S.Ct.* 2793, 111 *L.Ed.*2d 148 (1990)." *State v. Maristany,* 133 *N.J.* 299, 305, 627 *A.*2d 1066 (1993). "In assessing an officer's

reliance on a third party's consent, we consider whether the officer's belief that the third party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search." *State v. Suazo*, 133 *N.J.* 315, 320, 627 *A.*2d 1074 (1993); *see generally*, Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment*, § 8.3 (2d ed. 1987) (1994 pocket part at 70–71).

■ We are satisfied that the police, based upon the circumstances known to them when they stopped defendants near the baggage carousel, reasonably relied upon Kelley's consent to the search of all four bags, including the two which Ellis had been carrying. The police received an anonymous tip that the defendants were jointly involved in the transportation of narcotics from Tucson, Arizona to Newark. The suspicion created by this tip was reinforced by defendants' refusal to place identification tags on their bags when they checked them at the Tucson airport. In addition, when the bags arrived in Newark, a K–9 dog trained by the United States Customs office to detect narcotics reacted positively to all four bags. Consequently, the police had a reasonable basis for believing that each of the four bags contained narcotics, that defendants were jointly engaged in the transportation of those narcotics into New Jersey, and that they had joint possession of the four bags as part of that criminal enterprise. Under these circumstances, the police had an objectively reasonable basis for believing that Kelley had the authority to consent to a search of all four bags. This belief was reinforced by the fact that Ellis, who was standing next to Kelley when he consented, failed to assert that any of the bags belonged to him alone or to object to the search. *Cf. United States v. Langston*, 970 *F.*2d 692, 698 (10th Cir.), *cert. denied*, —— *U.S.* ——, 113 *S.Ct.* 439, 121 *L.Ed.*2d 358 (1992).

Affirmed.