**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is only binding on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3024-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDRE T. LINDSEY, a/k/a
ANDRE T. LIDSEY and ANDRE
LINDSEY,

    Defendant-Appellant.

_____

       Submitted September 21, 2016 — Decided August 18, 2017

       Before Judges Fuentes and Simonelli.

       On appeal from the Superior Court of New
       Jersey, Law Division, Union County, Indictment
       No. 13-10-0922.

       Joseph E. Krakora, Public Defender, attorney
       for appellant (Jaime B. Herrera, Assistant
       Deputy Public Defender, of counsel and on the
       brief).

       Christopher S. Porrino, Attorney General,
       attorney for respondent (Jennifer E. Kmieciak,
       Deputy Attorney General, of counsel and on the
       brief).

PER CURIAM

On October 31, 2013, a Salem County grand jury returned Indictment No. 13-10-0922, charging defendant Andre T. Lindsey with fourth degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(12); third degree possession of marijuana with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7; second degree possession of marijuana with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1; second degree unlawful possession of a firearm, N.J.S.A. 2C:39-5b; second degree possession of a firearm in the course of committing a drug offense, N.J.S.A. 2C:39-4.1a; and third degree receiving stolen property, N.J.S.A. 2C:20-7.

After the court denied his motion to suppress the evidence supporting the charges in Indictment No. 13-10-0922, defendant entered into a negotiated agreement with the State in which he pleaded guilty to fourth degree possession of marijuana with intent to distribute and second degree unlawful possession of a firearm. The State agreed to dismiss the remaining counts of the indictment and recommend the court sentence defendant to an aggregate term of five years, with three years of parole ineligibility. The State also agreed to recommend that the court permit defendant to serve this sentence concurrent to a separate three-year term the

court imposed under Indictment No. 14-2-0143. Defendant is not appealing his conviction under Indictment No. 14-2-0143.

On December 19, 2014, the court sentenced defendant to a term of five years with three years of parole ineligibility on the charge of second degree unlawful possession of a firearm. However, the judge did not impose a separate sentence on the charge of fourth degree possession of marijuana with intent to distribute. The Judgment of Conviction (JOC) also erroneously states the court imposed a five-year term on this fourth degree offense. Both parties agree that even if we affirmed the trial court, a remand is required to permit the trial judge to sentence defendant on the charge of fourth degree possession of marijuana with intent to distribute and thereafter amend the JOC accordingly.

Pursuant to Rule 3:5-7(d), defendant appeals from the trial court's order denying his motion to suppress the evidence seized from the trunk of his car by officers from the Plainfield Police Department. Relying on State v. King, 44 N.J. 346 (1965), defendant claims the police officer at the scene coerced him into signing the consent to search form by telling him the police would tow his car if he refused. Defendant also argues the police officers at the scene violated his rights under the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution by failing to make any

effort to obtain an electronic search warrant, as required by the prevailing legal standards at the time.

In response, the State admits that the police officer at the scene told defendant that if he did not sign the consent to search form, the vehicle would be towed to the Plainfield Police Station and kept there until and a search warrant could be obtained. The State also agrees that King established the relevant standard for determining whether defendant made a voluntary and knowing waiver of his rights when he signed the consent to search form. The State argues, however, that the trial judge correctly applied the Court's holding in King to find that defendant was not coerced into signing the form.

The State also argues the trial judge correctly applied the then-prevailing factors under State v. Pena-Flores, 198 N.J. 6, 29 (2009), to conclude that exigent circumstances made it impractical for the officers at the scene to obtain an electronic search warrant. The State argues the motion judge's factual findings in support of this conclusion are well supported by the record developed at the evidentiary hearing, and are thus binding on this court. See State v. Elders, 192 N.J. 224, 244 (2007).

After reviewing the evidence presented at the motion hearing, we affirm. In reaching this conclusion, we emphasize defendant did not challenge the propriety of the initial motor vehicle stop.

The evidence presented by the State to uphold the warrantless search of defendant's car came entirely from the testimony of Sergeant Christopher Sylvester of the Plainfield Police Department, Narcotics Division. Sylvester testified that on July 22, 2013, he was the supervisor of the Narcotics Division and was assigned to a "Backup Takedown Unit" to support Detective Reginald Johnson "who was conducting an undercover narcotics surveillance in the west end of the city[,]" an area encompassing Myrtle Avenue and Rock Avenue. Sylvester described this area as "a residential [and] business area, a more quiet area of the city, but a . . . high narcotic[s]-dealing area."

There were two other Backup Takedown Units working with Sylvester that day. Each Unit consisted of two detectives who communicated using cellular phones with a "push to talk" feature similar to "the old Nextels." Sometime during the surveillance, Johnson advised Sylvester and the two other Units that he "had just witnessed a possible narcotics transaction between . . . three individuals in a BMW and two individuals in a Ford." Johnson "wanted both vehicles stopped[] . . . and further investigated for any possible narcotic[s] activity."

Sylvester responded to the intersection of Rock Avenue and Myrtle Avenue where two detectives from one of the Backup Takedown

Units had stopped the BMW. When Sylvester arrived, the detectives at the scene "already had all three individuals of the BMW removed from the vehicle, placed in handcuffs, and . . . seated on the curb[.]" Sylvester testified that Detective Elias Muhammad advised him "he had smelled . . . raw marijuana emanating from either one of the individuals or from inside of the . . . BMW."[1]

When Sylvester asked the three handcuffed individuals seated on the curb who owned the BMW, defendant said he owned the car. According to Sylvester, when he requested defendant to produce the vehicle's registration and proof of insurance card, "he told me they were somewhere inside the vehicle, but he wasn't sure [where] at the time." The police officers later found these documents behind the driver-side visor. Sylvester testified he "attempted to open" the car's glove box, but found it was locked. Sylvester explained he did this because "[t]ypically people keep their registration and insurance cards in the glove box." Defendant informed Sylvester the glove box was not locked, "but it needed to be jimmied open because the mechanism had been broken, or something to that extent."

---

[1] Despite this nebulous description of alleged criminality and the absence of any other information supporting a finding of probable cause to arrest defendant on a specific charge at this point in time, defendant has not challenged the propriety of the motor vehicle stop, his removal from his car, and/or his handcuffed detention.

According to Sylvester, when he asked defendant if he could search the interior of the car, defendant "said he didn't have a problem with it and he said go ahead." A search of the BMW's interior did not uncover any contraband, so Sylvester "escorted Mr. Lindsey . . . to the rear of the vehicle and asked him if he was willing to sign a [c]onsent to [s]earch the trunk form."[2] Sylvester testified that defendant "agreed to sign the form." Sylvester next described how he obtained defendant's consent to search the trunk of the car:

> PROSECUTOR: Sergeant, when you provided the form to the defendant what, if anything, did you say to him?
>
> A. I . . . asked him and . . . he said he would and I said he did not have to sign it . . . but I informed him if he didn't[,] I would be towing his vehicle to police headquarters and would be applying for a search warrant.
>
> PROSECUTOR: And Sergeant, when you said that to the defendant[,] how did you say it?
>
> A. Just like I said it right now, very calmly.
>
> PROSECUTOR: Sergeant, what was his response?
>
>     . . . .
>
> A. He . . . asked me if he had . . . signed the form and consented to the search if I would not tow the car, and I said we would be leaving the car on the scene if he agreed to search on scene.

---

[2] The State does not dispute that defendant was in handcuffs when Sylvester asked him this question.

Sylvester testified that he filled out the standard consent to search a motor vehicle form and handed defendant a pen to sign it. Defendant allegedly read the form, wrote his name where indicated, and signed it. According to Sylvester, as soon as defendant signed the form he "looked at me and said I'm gonna [sic] tell you what's in the vehicle, what's in the trunk." When Sylvester asked him to explain, defendant allegedly said: "there's a gun and some weed." Sylvester testified that he opened the BMW's trunk with the key and immediately saw "a small handgun" and a "Clorox Bleach . . . hide-a-can[3] that was open and had a couple of bags of marijuana in it."

Citing State v. Johnson, 68 N.J. 349, 354 (1975), the motion judge acknowledged that when the State "seeks to rely on consent as the basis for a proper search, it has the burden of demonstrating that the consenting individual had knowledge that

---

[3] As Sylvester explained:

> [A] [h]ide-a-can is something that's made to look to the . . . naked eye as a household product[,] such as . . . a can of soda, a can of water, [or] a . . . spray can[,] [and] . . . looks exactly like what you would have normally, but . . . will usually twist open . . . and inside is a compartment to hide anything you need.

8

he had a choice to withhold consent."   In upholding the validity

of the consent, the judge found:

> Here, Mr. Linsey was the driver of the vehicle
> so he had authority to consent to the search.
> At the time of his consent, he was under arrest
> and placed in handcuffs.  The defense suggests
> that the detectives threatened the defendant
> by telling him that his car was going to be
> towed and confiscated due to use and narcotics
> trafficking if he did not sign the consent
> form and a warrant was imminent.
>
> With that in mind, . . . the State argues, and
> this court finds more credible, that Sergeant
> Sylvester asked defendant for consent to
> search the vehicle after not being able to
> locate the vehicle registration in the locked
> glove compartment; at which point, Sergeant
> Sylvester asked defendant if there was any
> contraband in the vehicle.  The defendant
> replied he could search the car if he wanted
> to.   Sergeant Sylvester then asked if
> defendant would sign a permission to search
> form.  The defendant agreed to sign the form
> and Sergeant Sylvester filled out the form and
> the defendant signed it.
>
> At this point, the defendant told the sergeant
> that there was weed and a gun in the trunk.
> Further, even if the detectives did threaten
> to have the car towed and get a warrant, these
> are not unlawful threats as the detectives
> were well within their authority to tow the
> car or obtain a warrant.  Given the signed
> permission to search form and based on the
> totality of the circumstances, the [c]ourt
> finds that knowing and voluntary consent was
> given by the defendant to the sergeant to
> search the vehicle.

Citing Pena-Flores, which the motion judge acknowledged

established the then-prevailing legal standard for determining the

validity of a warrantless search of an automobile, the judge stated the police may search a vehicle without a warrant when: (1) "the vehicle stop is unexpected;" (2) "the police have probable cause to believe that the vehicle contained contraband or evidence of a crime;" and (3) "exigent circumstances exist which [make] it . . . impracticable to obtain a warrant." The judge also acknowledged he must consider the following factors when determining if exigent circumstances existed:

> [T]ime of day, location of the stop, nature of the neighborhood, the unfolding of the events establishing probable cause, the ratio of officers to suspects, the number of officers available for backup, the existence of confederates who know the location of the car and can remove it or it[s] contents, whether the arrest was observed by passers[-] by who could tamper with the car or it[s] contents, whether the passengers are removed from the vehicle and placed in a police car[,] . . . whether the delay that would be caused by obtaining a warrant would place the officers or the evidence at risk[,] whether the vehicle could have been impounded, [and] whether the vehicle could be left without fear that evidence would be destroyed.

After this recitation, the judge found there was sufficient evidence to deny defendant's motion to suppress. The judge neither elaborated nor provided any further legal analysis.

Against this record, defendant now raises the following arguments.

POINT I

THE CONTRABAND OBTAINED FROM THE SEARCH OF THE
BMW MUST BE SUPPRESSED BECAUSE LINDSEY'S
CONSENT WAS NOT KNOWING OR VOLUNTARY AND THERE
WERE NO EXIGENT CIRCUMSTANCES JUSTIFYING A
WARRANTLESS SEARCH.

    A. The Search of the Trunk of the
    BMW Violated Lindsey's Fourth
    Amendment Rights Because the
    Consent Was Not Knowing or
    Voluntary.

    B. Because There Were No Exigent
    Circumstances Justifying the
    Warrantless Search of the BMW, the
    Contraband Discovered During the
    Search Must be Suppressed.

POINT II

THE JUDGMENT OF CONVICTION INCORRECTLY STATES
THE SENTENCE FOR COUNT ONE AND MUST BE
CORRECTED.

In State v. Witt, 223 N.J. 409 (2015), the Supreme Court overturned Pena-Flores, but made clear that its decision constituted a "new rule of law and will be given prospective application from the date of this opinion." Id. at 450. Because this case predates Witt, the principles and standards established in Pena-Flores apply. However, we are satisfied that defendant's decision to consent to the search of the trunk of his car obviates the need to determine whether the detectives could have secured an electronic warrant consistent with Pena-Flores.

Our analysis exclusively focuses on whether the motion judge's findings that defendant voluntarily and knowingly consented to the search of his car are supported by the competent evidence in the record. The parties agree that the Court's decision in King sets out the principles governing this assessment. The defendant in King was convicted of what today would constitute first degree robbery with a weapon.[4] King, supra, 44 N.J. at 348. On appeal, we reversed the defendant's conviction "on the ground that certain evidence introduced against him at his trial had been obtained by an unconstitutional search and seizure since his consent to the search had not been voluntarily given." Ibid. (citing State v. King, 84 N.J. Super. 297 (1964)).

The Supreme Court disagreed and reversed our decision. The Supreme Court began its analysis by noting that when an accused consents to a search, he or she "relinquishes the Fourth Amendment protection which prohibits unreasonable searches and seizures." Id. at 352. By its very nature, consent requires a voluntary act. "To be voluntary the consent must be 'unequivocal and specific' and 'freely and intelligently given.' The burden of proof is on the State to establish by clear and positive testimony that the consent was so given. Ibid. (emphasis added) (citations omitted).

_____

[4] See N.J.S.A. 2C:15-1.

The <u>King</u> Court delineated a series of factors that a judge should consider when determining whether the evidence clearly and positively demonstrated that defendant's consent was an unequivocally voluntary and intelligent act.

> Among those factors which courts have considered as tending to show that the consent was coerced are: (1) that consent was made by an individual already arrested; (2) that consent was obtained despite a denial of guilt; (3) that consent was obtained only after the accused had refused initial requests for consent to search; (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered; (5) that consent was given while the defendant was handcuffed.
>
> Among those factors which courts have considered as tending to show the voluntariness of the consent are: (1) that consent was given where the accused had reason to believe that the police would find no contraband; (2) that the defendant admitted his guilt before consent; [and] (3) that the defendant affirmatively assisted the police officers.
>
> [<u>Id.</u> at 352-53 (citations omitted).]

The Court emphasized that these factors were "only guideposts to aid a trial judge in arriving at his [or her] conclusion." <u>Id.</u> at 353. The Court also admonished appellate judges to be mindful that trial judges are "in a better position to weigh the significance of the pertinent factors[.]" <u>Ibid.</u> This deference stems from the motion judge's opportunity to develop a "'feel' of

the case" by personally hearing and seeing the witnesses testify, something inherently denied to us as appellate judges. Elders, supra, 192 N.J. at 243-44.

Applying these principles to the record developed in this case, we are satisfied the motion judge had sufficient grounds to find defendant voluntarily and knowingly consented to the search of the BMW's trunk. Sergeant Sylvester's statement to defendant that if he did not consent to the search, the car would be towed to a police lot and held until a warrant could be secured, was not a threat or a statement intended to coerce defendant into giving up his constitutional right. This information merely conveyed to defendant the futility of resistance under the circumstances. Defendant made a rational, voluntary, and intelligent decision to cooperate with the police. Indeed, the motion judge found that defendant told Sylvester about the presence of the handgun and the marijuana in the trunk before Sylvester opened the trunk.

Considering the totality of the circumstances, we discern no legal basis to disturb the motion judge's decision. We remand this case, with the parties' agreement, for the trial court to sentence defendant on fourth degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5a(a) and N.J.S.A. 2C:35-5b(1), consistent with the terms of the plea agreement, and to amend the JOC accordingly.

Affirmed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3024-14T3